## CHILTON'S ADM'R. vs. CHAPMAN.

Plaintiff and defendant were bound as securities; plaintiff accepted a conveyance of proper-
ty from the principal debtor, to indemnify him as security; the trustee, under the direc-
tion of plaintiff, sold the property for an amount sufficient to pay the debt, but never
collected the money; plaintiff paid the security debt and brought assumpsit against the
defendant for contribution. Held that the action could not be maintained.

## ERROR to Chariton Circuit Court.

### STATEMENT OF THE CASE.

The plaintiff's intestate instituted his action, in the Chariton circuit court, against the de-
fendant, to recover from him one half of a debt the plaintiff had paid to the branch bank of
Missouri, at Fayette, for the payment of which the plaintiff and defendant were securities of
one Thomas Chilton, who was the principal debtor to the bank. There is but one count in
the declaration for money had and received, for money paid, laid out and expended, for mo-
ney lent and advanced, and for work and labor, care and diligence. The defendant made a
defence, and upon a trial in the circuit court, the plaintiff took a non-suit and afterwards
moved to set it aside, which was refused, a bill of exceptions taken and the case brought here
by writ of error.

The following are, in substance the facts as presented in the bill of exceptions. The plain-
tiff, on the trial, introduced and read as evidence, the written statement of James A. Shirley,
who proved "that a note was executed by Thomas Chilton, Charles A. Chapman and M. A.
Chilton, to the bank of the State of Missouri for two hundred and fifty dollars, negotiable and
payable at the branch of said bank, at Fayette, Nov. 15, 1845, in four months—that Chap-
man and M. A. Chilton, were each securities to said note—that one half the debt, interest
and protest fees was paid to him by the agent of M. A. Chilton in Boonville, on the 29th of
July, 1846, and that the credit on the note was made by him—that the amount was one hun-
dred and twenty-nine dollars and fourteen cents—that the note was placed in the hands of the
bank attorney, and was collected—that he had seen a deed of trust of record in Howard coun-
ty, which was made to secure M. A. Chilton, one of the endorsers on said note above de-
scribed, as he had understood from Mr. Chilton, and that it must relate to the note as none
other was owing the bank by Thomas Chilton, and that he also knew it as he was then the clerk
of the bank." The plaintiff then read the note referred to. The plaintiff then read a transcript
of a judgment and execution thereon, obtained in the the Cooper circuit court, showing that the
note has been paid off by Mark A. Chilton—this was all the evidence given by the plaintiff.

The defendant, by consent of the plaintiff, then read to the jury a copy of a deed of trust
executed by Thomas Chilton to Mark A. Chilton and others, to secure the payment of this
debt. The defendant then introduced Owen Rawlins, who testified that about two years ago,
Albert Silman and Charles Chilton, who assumed to act as agent for the plaintiff, requested
the witness (who was the trustee in the deed) to close the deed. In accordance with said re-
quest, he requested the editor of a newspaper to advertise the land and negro mentioned in
the deed for sale—that on the day set for the sale, the witness was informed the notice was
not legal, and under advice of Mr. Leonard and Charles Chilton, the land and negro were ad-
vertised again for sale—the notice was put in the paper by Charles Chilton—that on the day of
sale, one John D. Thompson bid off the land for two hundred dollars, and the negro for eighty
dollars; both were sold subject to all incumbrances—that Thompson represented that he bid

Chilton's Adm'r vs. Chapman.

them off for Silman—that on the same day, Charles Chilton, who is the son-in-law of the plaintiff, and brother of Thomas Chilton, came to witness and proposed that he would write the deed of conveyance so as to save expense. The witness told him that he would make no conveyance until the money was paid, as the terms of the deed of trust required that he should pay the bank debt first. Chilton then left and said nothing more—that no money was ever paid by Silman or Thompson, and that he had never made any conveyance for the property to any one—that he did not execute the deed of trust himself, nor did he ever have the property in possession under the deed, but that he has since hired the negro man a short time from Charles Chilton. The defendant then introduced John D. Thompson who proved that he was at the sale of the property by Rawlins—that Silman was sick at the time and requested witness to bid in the property for him—that Silman told him to run the land to $600, and the negro to $200—that he had no conversation with Charles Chilton on the subject—that he bid off the land for $200 and the negro for ninety dollars, and told Judge Rawlins it was for Silman—witness paid no money—that the land, if clear of encumbrance, was worth eight hundred dollars, but would not give as much for the negro as he was bid off for—that he was only acting as agent for Silman. This was all the evidence given in the case.

The plaintiff and defendant asked several instructions, all of which, asked on both sides, except the first and last asked by the defendant were refused. The first instruction asked by the defendant, and given by the court, is in these words.

"That if the jury believe from the evidence, that the plaintiff, at any time before the commencement of this suit, accepted of a conveyance of property from the principal debtor, to indemnify him, as his security, and that he authorized said property sold, or accepted by himself or through an agent of the sale, they cannot find for the plaintiff in this suit; provided the property at such sale sold for a sum sufficient to indemnify him." The other instruction given, involves no principle and need not be stated. The plaintiff then took a non-suit and afterwards moved to set it aside, which was refused by the court.

SHACKLEFORD, for plaintiff in error.

1. A surety, who pays the debt of the principal, may compel a co-surety to contribute, without showing an inability in the principal to pay, and is not bound to pursue the principal before the co-security. Caldwell vs. Robert, 1 Dana 355; Oldin vs. Greenleaf, 3 New Hamp., 270.

2. The court committed error in refusing the plaintiff's instructions, as warranted by the facts, which show that the plaintiff never received any money arising from the trustee's sale, and the indemnity was of no value to him.

3. When there are several securities to a bond or note, and the principal conveys property in trust to indemnify one of them, and the others are not mentioned in the deed, they are all nevertheless protected, and the trust enures alike for the benefit of all. McMahan vs. Faucet et al., 2 Randolph, 514; Son vs. Smart, 5 N. Hamp., 368; Agnew vs. Bell, 4 Watts 31.

4. In this case, the proceeds of the trust property were to be paid in discharge of the note due the bank, and as neither the plaintiff's intestate nor the trustee had possession of the trust property, by the terms of the deed, the defendant had an equal interest with the plaintiff, in endeavoring to make the trust fund available for the purposes intended. The case differs in this respect from one in which a mortgage is made to the co-security, and he has the property in his possession by the terms thereof.

5. The defendant, on the payment of his contributive share, has an equal right with the plaintiff's intestate, to be re-imbursed for the amount he may be compelled to pay, out of the trust property, in the event of its being made available at any time.

CLARK, for defendant in error.

1. This being an action by a co-security, it was competent for the defendant to prove, that

Chilton's Adm'r vs. Chapman.

the plaintiff took from the principal debtor, a conveyance to indemnify him—that such conveyance enured to the defendant as well as the plaintiff, although not named in it; and that, before the plaintiff could recover, he must show that the security, thus taken, had been exhausted. Morrison vs. Poyts, 7 Dana, 307; 22 Pick., 117; 6 Wendall, 63.

2. The evidence in the case shows, most clearly, that a conveyance of property, ample to pay the debt, was taken from the principal debtor, and that the plaintiff ordered it to be sold, and that it was sold and brought at that sale more than enough to pay what he seeks to recover, as his proportion, from the defendant.

Napton, J., delivered the opinion of the court.

In this case the plaintiff took a non-suit, because of the following instruction: "If the jury believe from the evidence, that the plaintiff, at any time before the commencement of this suit, accepted a conveyance of property from the principal debtor, to indemnify him as security, and that he authorized said property sold, or accepted by him or through an agent of the sale, they cannot find for him, provided the property at such sale was sold at a sum sufficient to indemnify him."

This was the only instruction given. Its phraseology might be criticised, if we had not abundant experience of the blunders of copyists; but as we understand its import, its propriety is scarcely questionable, if the facts in evidence authorized it. The instruction is a plain legal deduction from the facts hypothetically assumed. If the sale under the deed of trust brought enough to indemnify the plaintiff and he acquiesced in the conduct of the sale by the trustee, he has no remedy against the defendant, his co-security.

The statement of the case shows there was evidence to warrant this instruction. The fact was, as the testimony discloses, that the plaintiff had taken a deed of trust upon real estate and a slave, amply sufficient to indemnify him—that the trustee was directed to sell under the deed— that he did sell for more than enough to pay off the debt, but the money was not paid by the bidder, and the trustee therefore refused to make a title. It seems that one Silman was also interested in the proceeds of the deed of trust, but only subject to the entire payment of the plaintiff's claim, and that Silman's agent was the purchaser.

It is obvious that the present action is useless in any view of the case. If the plaintiff fails to get his money, from the proceeds of the property conveyed to him, it must be by reason of some gross negligence or willful connivance of his own. It does not appear but that he is still amply secured, and that he need not resort to his co-security for whose benefit the deed enures as well as his own.

Judgment affirmed.