MARGARET TOLLE, EXECUTRIX, Appellant, *v.* ADOLPHUS BOECKELER, Respondent.

### April 4, 1882.

1. A fund set apart by a debtor to indemnify his surety, will, when the surety's liability becomes fixed, be applied, by a court of equity, to the payment of the debt.

2. In the case of several sureties no part of the fund thus set apart can be diverted to the payment of the general creditors of either, until the entire liability shall have been paid.

3. As between' several sureties, an indemnity against liability as surety, obtained by one, inures to the benefit of, and will be held in trust for, all.

4. After the liability has become fixed, the execution and delivery, to the creditor by each of three sureties, of a note indorsed by the others for one-third of the gross liability, has not the effect, in equity, of limiting the sureties' liability.

5. *Held,* that after the cause had been submitted, the trial court did not abuse its discretion in refusing to permit the plaintiff, executrix of one of the sureties, to file her individual interplea in which she claimed to have made a part payment of her testator's liability out of her separate estate.

6. *Held, further,* that, not being entitled to any part of the fund in controversy, she could not challenge the allowance of an attorney's fee, to the trustee of the fund, for defending the suit.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Affirmed.*

W. B. THOMPSON, for the appellant : The acceptance of the notes by the heirs and distributees of Brand, in' settlement of the liability of the sureties on the bond of Barth,

discharged the sureties on the bond, and there could be no recovery thereafter on the bond. — *Hunery* v. *Marksberry.* 57 Mo. 399; *The State* v. *Manning*, 55 Mo. 142; *Horen* v. *Rowley*, 57 Mo. 357; *Newcomb* v. *Blakely*, 1 Mo. App. 289. The evidence of the German consul was incompetent after the agreement read in evidence, such agreement being conceded by both sides to be the contract between the sureties who delivered the notes, and the agreement was not subject to parol evidence. — *Marpenter* v. *Jamison*, 6 Mo. App. 216. Schulenburg cannot retain the one-fourth interest unless the same is applied in extinguishment of the note, and such should be the decree, otherwise Tolle's estate will pay of Schaeffer's liability the amount of this note, and be deprived of a right which in equity belongs to sureties, namely, to be subrogated to the rights of the creditor to all security in favor of such creditor. In other words, Schulenburg would obtain a security for his own use and benefit in which Tolle is interested equally. — *Wilcox* v. *Todd*, 64 Mo. 388. The principles of equity in this case being so well settled, the appellant has not cited the numerous authorities existing which define the relation between debtor and creditor, and principal and surety. — *Haden* v. *Foley*, 18 Mo. 136; Brandt on Surety., sect. 282; *Chellone* v. *Chapman*, 13 Mo. 470; Story's Eq. Jur., sect. 499.

Louis Gottschalk, for the respondent, cites : *Wilcox* v. *Todd*, 64 Mo. 388; *Wright* v. *Austin*, 56 Barb. 13; Brandt on Surety., sects. 282–284; *In re Baldwin*, 8 Cent. L. J. 186.

Thompson, J., delivered the opinion of the court.

The facts of this case are somewhat complicated with detail ; but when they are understood, it will be seen that the question involved lies in a small compass, and is entirely free from doubt.

On the thirty-first day of August, 1875, Robert Barth, now

deceased, was executor of the estate of Bernard H. Brand, deceased. The sureties on his bond as such executor were John F. Tolle, who was the plaintiff's testator, Nicholas Schaeffer, since deceased, Frederick Schulenburg, Felix Coste, and Louis C. Hirschberg. Three of these sureties — namely, Schulenburg, Tolle, and Schaeffer — were supposed to be solvent at this time, and the other two, Coste and Hirschberg, were known to be insolvent. Barth had wasted the assets of the estate of which he was the executor; was indebted to it in a large amount beyond his ability to pay; and it was known that his solvent sureties would have to make good this deficit. He was also indebted to the defendant Boeckeler for moneys which the latter had advanced to him. He was the owner of and beneficiary in a policy of insurance which had been issued upon his life for the sum of $10,000, by the Mutual Life Insurance Company of New York. For the purpose of securing to Boeckeler what he thus owed him, and also of indemnifying his solvent sureties, so far as he could, against the amount which they would have to pay on account of his indebtedness to the Brand estate, he executed an assignment of this policy of insurance in trust to Boeckeler, accompanied with the direction that when the amount thereby secured should be collected, Boeckeler should have one-fourth of it, and that Schulenburg, Tolle, and Schaeffer should each have one-fourth.

This assignment was in the following language: —

"For one dollar to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged), I hereby assign, transfer, and set over all my right, title, and interest in this policy, No. 144,558, issued by the Mutual Life Insurance Company of New York, to Adolphus Boeckeler, trustee, of St. Louis, Missouri; and for the consideration above expressed, I do also for myself, my executors, and administrators, guarantee the validity and sufficiency of

the foregoing assignment to the above-named assignee, his executors, administrators, and assigns, and their title to the said policy will forever warrant and defend.

"Dated in St. Louis, Missouri, this thirty-first day of August, 1875. ROBERT BARTH."

It is admitted in the pleadings that the assignment was made upon the trusts above stated.

On the 30th of April, 1879, Barth died insolvent. He had made his settlement in the probate court as executor of the estate of Brand, and, at the time of his death, stood indebted to the distributees of that estate to an aggregate amount of more than $50,000, which amount his solvent sureties, Schulenburg, Schaeffer, and Tolle, stood liable to pay.

Dr. Gerlich, the imperial German consul at St. Louis, was the agent and attorney in fact, of the distributees of the Brand estate. After the amount which the solvent sureties of Barth would have to make good had been ascertained by the settlement of Barth in the probate court, these sureties entered into an arrangement with Dr. Gerlich, as attorney in fact of the Brand heirs, by which the amount for which the sureties stood liable was liquidated by the giving of eighteen promissory notes for $2,750 each, amounting in the aggregate to the sum of $49,500. These notes were so drawn as to express the amount which each surety, as between the sureties themselves, stood liable to pay, and so as, at the same time, to preserve the joint and several liability of all the sureties for the whole amount. Thus, six of the notes were executed by Schulenburg, and indorsed by Schaeffer and Tolle; six of them were executed by Schaeffer, and indorsed by Schulenburg and Tolle; and six of them were executed by Tolle, and indorsed by Schulenburg and Schaeffer. These notes were all dated on the 15th of October, 1877. The notes of each series matured respectively in six, twelve, eighteen, twenty-four, thirty, and thirty-six months, and each of them bore interest at the rate

of six per cent per annum from its date. These notes were delivered to Dr. Gerlich by the makers of them respectively, and he gave to each a receipt, of which the following, which was given to Tolle, is a specimen : —

"In the matter of the estate of Henry Brand, I have this day received from Mr. J. F. Tolle, of this place, as surety of the insolvent executor, Robert Barth, the following notes to cover that part of the estate, which, according to the present condition of things, he is to make good, amounting to $16,500, besides interest at six per cent from October 15, 1877 : —

"$2,750, payable April 15, 1878, with interest at 6% from October 15, 1877.

"$2,750, payable October 15, 1878, with interest at 6% from October 15, 1877.

"$2,750, payable April 15, 1879, with interest at 6% from October 15, 1877.

"$2,750, payable October 15, 1879, with interest at 6% from October 15, 1877.

"$2,750, payable April 15, 1880, with interest at 6% from October 15, 1877.

"$2,750, payable October 15, 1880, with interest at 6% from October 15, 1877.

"Each of these notes is indorsed by N. Schaeffer and F. Schulenburg, in order to substantiate the total liability of the gentlemen named. In order to secure the parties in interest against a possible loss of the notes, and as these notes are to remain at the imperial consulate at St. Louis until their maturity, and are to be presented by him in person for payment; therefore, Mr. Tolle is respectfully requested to make payment of each matured note only upon receipt of the imperial German consul, to be made on the note itself.

"St. Louis, January 23, 1878.                    .

"The Imperial German Consul,

"Gerlich."

Dr. Gerlich testified, at the hearing of this cause, without objection, that he did not accept these notes in satisfaction of the liability of the parties to them as sureties of Barth, but that, on the contrary, it was expressly understood between him and them that the notes were not taken, and were not to be, in satisfaction or payment of the bond on which they were liable as sureties.

These notes have been paid as follows: Schulenburg has paid the six which were made by him; Schaeffer, before his death, paid two of those which were made by him; Tolle, before his death, paid the first two which were made by him. It is claimed, as we shall see hereafter, that Mrs. Tolle paid the second one out of her estate, but there is no competent evidence to show this, though she proved it up as a claim in her own favor against her deceased husband's estate. The remaining four were allowed as claims against his estate, by the probate court, in favor of the distributees of the Brand estate, and ranked for payment in the fifth class. The third note executed by Schaeffer, and indorsed by Schulenburg and Tolle, had been protested for non-payment, and, on April 24, 1879, was also allowed by the probate court as a demand against the estate of Tolle, in favor of Mrs. Bokamp and the other distributees of the Brand estate, and likewise ranked among claims of the fifth class.

The estate of Tolle has paid a dividend of fifteen per cent upon all claims allowed against it, and ranked in the fifth class, including the claims presented by the distributees of the Brand estate, and it is admitted that Tolle's estate is now insolvent. The estate of Schaeffer is also insolvent. And this brings us to the fact which is the turning-point of this case, that, of the five sureties on the bond of Robert Barth, as executor of the estate of Bernard H. Brand, Schulenburg alone remains solvent; that he has paid that portion of the amount which, as between himself and his co-sureties, Schaeffer and Tolle, he stood liable to pay;

that the latter and their estates have paid, respectively, about one-third of the amount which, as between the three sureties, they respectively stood liable to pay ; and that the deficit, amounting to near $25,000, must be made good by Schulenburg alone.

On April 30, 1879, Mr. Barth died, and, on July 5th, the defendant Boeckeler collected from the Mutual Life Insurance Company of New York, the amount due upon the policy of insurance upon the life of Barth, which had been assigned to him as trustee, as already stated, amounting to the sum of $10,203.   On April 18, 1879, Schaeffer having paid two of the notes made by him, as already stated, assigned, for the consideration of one dollar, his interest in this policy of insurance, to Schulenburg.   Why he did this is not distinctly stated, but the inference is plain, that, knowing himself to be insolvent and unable to pay any more of the notes, and knowing that the burden of discharging all that remained unpaid, whether executed by Schulenburg himself or by Tolle, would fall upon Schulenburg alone, he determined to pass over his portion of the trust-fund to Schulenburg, to indemnify the latter as far as possible against his now increased liability, — a resolution which was eminently just and proper.   Of the proceeds of the policy of insurance collected by Boeckeler, one-half was by him handed over to Schulenburg ; one fourth was retained by himself, and, as we infer from the record, the other one-fourth, which is the fund here in controversy, was paid into court.

Mrs. Tolle has brought this suit in equity for the purpose of having paid over to her as executrix of the estate of her deceased husband, one-fourth of this amount, according to the terms of the trust upon which the policy was assigned to Boeckeler.   Mr. Boeckeler has answered, setting up substantially the foregoing facts.   Mr. Schulenburg has answered, setting up his equities against this claim, substantially as we have stated them, and the heirs of the

estate of Brand have appeared and interpleaded, praying that the portion of the fund claimed by the plaintiff be applied in payment of the notes of Tolle held by them, or be paid over to them to be by them so applied.

After the cause had been heard in the circurt court and before the decree was entered, Mrs. Tolle, the plaintiff, applied for leave to file a petition, setting up, substantially, that the second note given by Tolle had not, in fact, been paid by him in his lifetime, but was paid by her out of her separate estate; that she had presented this note as a claim against the estate of her deceased husband; that it had been allowed as such by the probate court, and that she had received a dividend of fifteen per cent thereon, in common with the other general creditors of her deceased husband. She therefore prayed that she might be allowed to enter her appearance in the cause as a defendant and an interpleader, and that the court should order and direct that whatever portion of the trust-fund claimed by her as plaintiff in her capacity as excutrix, might be ordered or decreed to the defendants, should be ordered to be paid to her as the assignee of such note. The court refused to allow this petition to be filed, and the propriety of this ruling is one of the questions in the case.

The questions arising upon this long statement of facts may be simplified by supposing the case of A. being indebted to C., and B. being A.'s surety for the payment of the debt. A., becoming insolvent, and knowing that when the debt matures he will not be able to pay it, and that it will have to be paid by B., his surety, who is solvent, and desiring to save B. harmless as far as he can, conveys certain property to D. upon a trust to convert it into money and pay over a portion of the proceeds to B. In such a case the comnom sense of justice possessed by men would say that this fund ought to be applied, first, to the payment of the debt due by A. to C., if that debt could not be paid in any other way, and if C. should ask to have it so applied; or, if C. should

not ask to have it so applied, that it should, nevertheless, be so applied as far as it would go, for the purpose of exonerating the surety B.   And this is undoubtedly the manner in which a court of equity, which has plenary jurisdiction in cases of trust, would order it to be applied.   While the original creditor, C., remained unpaid, or while the surety, B., remained unexonerated, it would be against justice that this fund should be diverted to any other purpose.

So in this case.   While the estate of Barth remains indebted to the distributees of the estate of Brand in a sum several times as great as the portion of this   trust-fund claimed by the plaintiff, she cannot have any of it; for it would be unjust to the distributees of the Brand estate to allow her to have any of it.   In like manner, while the defendant Schulenburg stands before the court the only remaining solvent surety of the executor of Brand, having fully paid and discharged that portion of his liability which, as between himself and his co-sureties, he was obliged to pay, — and if we consider the liability of all five of the sureties, a good deal more, — and, standing now liable to make good, and, as we infer from the record, able to make good, the entire deficit, including what should have been made good by Coste, by Hirschberg, by Schaeffer, and by Tolle, and the amount which he will be obliged to make good   for Tolle, being much greater than the trust-fund which Tolle's executrix is here claiming, — he is entitled to say that she shall not have this fund, or any of it, but that it shall be applied in payment of the original indebtedness of Barth to the Brand heirs, represented by the Tolle notes, for the purpose of exonerating him as far as it will go.   How could Tolle, if he were alive, say to Schulenburg : " I have paid two of my notes and fifteen per cent on the balance.   I am insolvent, and can pay no more ; you have paid all that, as between you and Schaeffer and myself, you were liable to pay, and yet you are liable to pay seven or eight thousand dollars for me ; notwithstanding you are so liable, I

am entitled to pocket my share of the proceeds of the policy of insurance, which was placed in trust for our indemnity, and use it for myself, or give it to my creditors." We shall not enlarge upon this. The principles upon which this case must be decided, and their application to the facts of this case, have been well set forth in a written memorandum of opinion made by the learned judge of the circuit court, who heard the case. As this opinion expresses substantially our own views upon the case, we adopt it as our own opinion. It is as follows : —

" BOYLE, J. — From the evidence I am satisfied the purpose of the trust in Boeckeler was to indemnify Schulenburg, Schaeffer, and Tolle, as far as the trust-fund would extend, on the liability they would certainly have imposed on them as sureties on Barth's bond as executor of the Brand estate. Barth had become insolvent. He realized that his default as such executor was inevitable, and that as the three sureties above named were the only solvent sureties on his bond, the burden of making good the default would fall on them. Hence the trust was created in their favor, to the exclusion of the two other sureties, who were known to be insolvent.

" It is a general rule that a creditor is entitled to the benefit of securities given by a debtor to his surety by way of indemnity. *Haven* v. *Foley*, 18 Mo. 136 ; Brandt on Surety., sect. 282.

" So, as between several sureties, if one, before payment of his liability as such, obtains an indemnity on account thereof, such indemnity inures to the benefit of all, and the one procuring it holds it as trustee for the others as well as himself. Brandt on Surety., sect. 233, and cases cited ; *Chilton* v. *Chapman*, 13 Mo. 470 ; Story's Eq. Jur., sect. 499.

"Applying these rules to this case, it seems clear that at the time default was made by Barth in failing to comply

with the order of distribution in the Brand estate, the distributees were entitled to have the trust-fund, or indemnity, provided by Barth for these three sureties, applied to the payment of their claims under such order. And, further, if either of the three sureties had been required by the distributees to pay the whole of their demands, the surety thus paying would have been entitled to have the whole of the indemnity applied by way of contribution.

"The material question, therefore, is, whether the giving of the eighteen notes by these sureties, in the manner they were given, took this trust-fund, or indemnity, out of. the operation of the rules above referred to. In my view, it did not. The same principle seems to me applicable on the notes as on the bonds, both as regards the rights of the distributees and of the sureties. The weight of the evidence is strongly in favor of the conclusion that there was no release or discharge of the bond by the distributees, nor was there any understanding on the part of the sureties that such was the effect of the notes being received. The notes were taken, as it seems to me from the testimony, merely for the convenience of the sureties. They were evidence of an agreement to extend the time of paying the liability on the bond, rather than of a discharge of the liability.

"The liability under the bond was to pay the amount of the default. Each was liable for the entire amount. The liability on the notes was for the same amount, and each was liable to pay the entire amount of the notes. If each paid his *pro rata* liability on the bond, neither would have to pay more than one-third of the entire default. And so, if each paid the notes made by him, and which evidenced his *pro rata* amount, neither would be required to pay more than the amount of his several notes, or one-third the entire default. The notes, therefore, even if they be considered as having been accepted as a complete substitution for the bond, are still for the same liability for which the trust was created as an

indemnity. They merely changed the form or method of paying this liability, and cannot be considered as having discharged it.

" One-third of the trust-fund (after deducting Boeckeler's interest) was given each to Tolle, Schulenburg, and Schaeffer, as indemnity for their liability as sureties; or, in other words, for the amount they would respectively be required to pay, by reason of having become such sureties. At the time the trust was created, as well as at the time of the default, all three sureties were solvent, or thought to be so. Each was expected to pay one-third, and the trust was undoubtedly created with a view that each would discharge his equal share. The distributees, as we have seen, had they chosen to enforce payment of the entire amount at the time of the default, would have been entitled to the benefit of the entire fund held in trust for these sureties, or to any part of it. In my judgment, they are equally entitled to have the trust-fund applied to the payment of the notes, which represent the same liability — the amount of Barth's deficit as executor of Brand.

" That the equities of the parties favor this view there can be no question. The evidence shows that Schaeffer has died insolvent, and that of the notes given by him there remain due and unpaid the last four, amounting, exclusive of interest, to more than four times the amount of the trust-fund applicable to his indemnity. The same is true with reference to Tolle. Schulenburg, the only survivor of these three sureties, has fully paid the notes given by him for his one-third of the liability; and, being fully solvent, his liability to pay the notes of Tolle and Schaeffer, on which they are in default, has become fixed under his indorsement. It would certainly be inequitable to him that the fund designed as indemnity upon the whole liability of either Tolle or Schaeffer should be appropriated by the general creditors of their respective estates, instead of being applied indirectly upon the indebtedness for which it was intended

by Barth to be security, as far as it would extend. Had Schulenburg paid all of the notes on which he is liable as indorser, he would be entitled in law to the application of the entire fund held as indemnity for Tolle and Schaeffer, in part satisfaction of his claim for contribution. The fact that he has become *liable* to pay such notes would seem sufficient to entitle him in equity to demand that the security held for the indemnity of Schaeffer and Tolle be applied to the payment of these notes, as far as it will go.

" So far as Schaeffer's interest in the fund is concerned, it is clear, from the evidence, that it has been already vested in Schulenburg by the assignment to him by Schaeffer in his lifetime. The insolvency of Schaeffer and the liability of Schulenburg as indorser on his notes were sufficient consideration for the assignment. I do not understand that the distributees are making any claim in this proceeding to the portion of the trust-fund intended as indemnity to Schaeffer, or that they dispute the right of Schulenburg thereto under the assignment to him by Schaeffer. The only portion of the fund that is really in controversy is that claimed by Tolle's executrix. And as to that, I think the decree should be that it be applied to the payment of the unpaid notes of Tolle in the order of their maturity. As I understand the testimony of these unpaid notes, the one which first matured was that for $2,750, payable April 15, 1879, with six per cent interest from October 15, 1877. The amount of the Tolle portion of the trust-fund will be insufficient to wholly discharge this note. The holder would, therefore, be required to indorse the amount of the fund so received as a credit upon this note."

We shall only add what is necessary to show that we have not overlooked the points made by the learned counsel for the appellant in his brief.

1. The acceptance of the notes in question, it is urged, discharged the sureties, so that there could be no recovery thereafter upon the bond. It is possible that this was so,

although the evidence of the German consul was to the effect that there was an express understanding to the contrary. It is urged, however, that this evidence was incompetent. The answer to this is, that it was admitted without objection, and the question, therefore, does not arise upon exception, and is not open for examination here; but if it had been objected to, we should not be able to say that it was incompetent. The transaction, so far as it was expressed in writing, did not, we think, assume a form so free from ambiguity as to exclude parol explanation. We have no doubt that the object of all the parties to the transaction was to liquidate the liability of the sureties on the bond of Barth in such manner as to express the amount which each surety was to pay, to preserve, at the same time, the liability of all sureties *in solido*, and to give the sureties the indulgence of three years in which to make the payment. The plan which was hit upon — the making of the six notes by each surety for his one-third of the liability, and the indorsing of each of these notes by the other two sureties — was aptly devised to produce this result. However this question might appear in a court of law, — although it might well bar an action against these sureties on the bond, — a court of equity, which looks through the form and into the substance of things, will never say that it had the effect of changing their liability to the distributees of the Brand estate, or to each other. On the contrary, it had the exact effect of defining and preserving that liability. It is, therefore, wholly irrelevant to say, as the learned counsel does in his brief, that, because the distributees cannot sue on the bond, they have no equity in the case. Moreover, it involves a mistake of fact to say, as the learned counsel argues, that no suit can be brought against Schulenburg, because he has paid all of the notes of which he was the maker. The four notes made by Schaeffer and the four made by Tolle, which were not paid, were, as the evidence shows, protested for non-payment, and Schulenburg stands liable to pay them, and, for aught

that the record discloses, is liable at any day to be sued upon them.

2. Again, the learned counsel asks how, if the heirs and distributees of Brand had an equitable lien on the Barth insurance money for the payment of the eighteen notes executed by the sureties, could the court find in favor of the assignment by Schaeffer of one-fourth of the fund to Schulenburg. The answer is, that that is a question which does not arise in this case. There is no controversy here about the one-fourth of the fund which was assigned to Boeckeler in trust for Schaeffer; the controversy relates only to the one-fourth which was assigned to Boeckeler for Tolle. Whether the assignment by Schaeffer to Schulenburg was good or bad, is a question between the heirs of Brand and Schulenburg; and they are not litigating that question in this case. We have already expressed the opinion, however, that this assignment was one eminently just and proper under the circumstances under which it was made.

3. It is said the decree of the court deprives the co-surety of Schulenburg of any portion of that fund. The answer is, that the decree applies it in the payment of that portion of the liability of Tolle which, as between himself and Schulenburg, he was bound to pay. It does not, therefore, deprive him of any portion of the fund; on the contrary, it gives it to him, but compels him to apply it as it was intended by Barth, the original donor of the fund, that it should be applied. It could not, for. a moment, be supposed that if Barth had foreseen that Schulenburg would pay his full share of the joint liability, that Schaeffer would pay but one-third of his share, and that Tolle would pay but a little more than one-third of his share, leaving Schulenburg to make good the entire deficit alone, he would have assigned this fund in equal parts to Schulenburg, Schaeffer, and Tolle.

4. Again, it is said that the fund in controversy should have been applied *pro tanto* to the payment of the first note made by Tolle, which he failed to pay, and to the

first note made by Schaeffer, which he failed to pay. The answer is, that the portion of the fund here in controversy was assigned in trust for Tolle, and not for Schaeffer. The donor of the fund, when he created the trust, presupposed that Tolle would discharge and pay his entire portion of the joint liability of the three sureties, and it was upon this basis that the partial indemnity was created. Tolle has not done this ; and now the complaint is that the court, exercising the powers of a court of equity, does it for him, out of the fund in question, so far as it will go. There is no substance in this ; and the appellant has nothing to complain of in the fact that the court applied the fund *pro tanto* upon the third note of Tolle, which was held by the distributees of the Brand estate. To apply it on the second note would have been to give it to Mrs. Tolle, contrary to evident purposes of the donor.

5. Again, it is objected that the court has found in the decree that all of the insurance money held by Boeckeler in trust, did inure to the benefit of the Brand heirs, but nevertheless has held that they were entitled to a distribution of only one-fourth. The answer to this is a repetition of what we have already said. The plaintiff's petition only asks for a distribution of one-fourth. There is no crossbill claiming a distribution of the whole fund. Neither the answer of Schulenburg, nor the interpleader of the distributees, claims that. How can it be said that the court has committed error in not adjudicating upon matters which were not before it for adjudication? The character and scope of a suit is determined by the claim made in the petition, unless it is enlarged by some claim set up by way of answer or counter-claim.

6. It is also said that the decree is unjust because Schulenburg may never pay one cent of the liability of Tolle or Schaeffer. The answer is, that he is solvent and stands liable to pay it, and it is against equity that a fund set apart to Tolle to indemnify him in case he should pay his share

of the liability, should be distributed among Tolle's creditors, leaving Schulenburg to make good what Tolle ought to have paid.

7. It is also urged that the court erred in finding as a fact that the second note made by Tolle had been paid by Tolle himself, whereas, it is claimed that it was, in fact, paid by Mrs. Tolle out of her own estate. What evidence was there of this fact? Nothing but the *ex parte* affidavit of Mrs. Tolle, presented to the court in her petition of interpleader, after the case had been heard, and while the court held it under advisement. There is no principle on which this affidavit could be considered evidence in the case. It was not even a deposition taken upon notice. The opposite parties had not had an opportunity to attend and cross-examine. It is not necessary to discuss this at all. It is sufficient to say that the evidence at the hearing showed that the note had been paid by Mr. Tolle.

8. This brings us to the question of the propriety of the ruling of the circuit court in refusing to allow Mrs. Tolle's interpleader to be filed. This, we think, was a matter addressed largely to the discretion of the court. It was an application to the court after the cause had been heard, the hearing adjourned, and, as we infer from the record, after it had, in fact, been decided and the written opinion of the court lodged with the papers, though before the decree had been entered of record, to reopen the case; and for what purpose? For the purpose of letting in evidence of a fact, which, whatever may have been the knowledge of her counsel, the plaintiff herself had in her breast all the time, and did not choose to come forward and disclose. And how could such evidence, if admitted, have changed the result? It could not have had any influence upon the result whatever. Mrs. Tolle could not acquire, by paying this note of her husband out of her own estate, any greater equity with reference to the fund here in controversy, than he himself had; and, as we have already decided, he would have had

no equity, had he paid this note, to have it handed over to him. By paying this note, or rather, by purchasing it, — because, according to the showing made by herself and her counsel in his affidavit for a new trial, the note itself was not extinguished, but was proved up by her as evidence of an indebtedness of her husband's estate to her, — she acquired exactly what she received, and no more, namely, the right of a dividend out of her husband's estate, in respect of this note.

9. What is above said also disposes of the question that this second note received no credit in the distribution which the circuit court directed to be made of the fund in controversy. As the evidence before the court was, that it was paid, it was not entitled to any such credit. In fact, the whole debate in the appellant's brief about the second note made by Tolle, may be disposed of by the statement that there is no evidence in the record which we are entitled to consider, that that note was purchased by Mrs. Tolle and not paid by Mr. Tolle.

10. The only remaining objection which it is necessary to notice, is to that part of the decree which makes an allowance of $150 out of the fund in court to the defendant Boeckeler, "for services and as attorney's fee in defending this suit," before providing for the application of the balance. Whether this part of the decree was correct or not, is a question which does not arise upon this record, because, as the plaintiff was entitled to no part of the fund in controversy, the plaintiff was not injured by it. No party appealing, therefore, has been injured by this order. Schulenburg might have objected to it as prejudicial to him, saved the question in the proper manner, and appealed; and so might the Brand heirs; but the plaintiff is in no position to object to it, because she has not been injured by it.

The judgment of the circuit court is affirmed. Judge BAKEWELL concurs; Judge LEWIS did not sit.

Thompson, J., delivered the opinion of the court on a motion for a rehearing.

The learned counsel for the plaintiff seems not to have understood, or not to have given proper consideration to, the principles upon which this case was decided by the circuit court, and by this court; otherwise this appeal would not have been taken, and this motion for rehearing would not have been filed. We are now urged to reopen the case; and we are urged to do this on the ground that in the opinion we have overlooked or mistaken conceded facts in the case. It is claimed that we have erroneously stated two important facts: *First*, that we have stated that Tolle paid the second note in his lifetime; *secondly*, that Mrs. Tolle proved it up against her deceased husband's estate in her own favor. The evidence in the record as to who paid the note, is not clear, and this was so stated in the opinion. The German consul testifies that Tolle paid it; but as it did not mature until shortly after his death, and as it appears to have been proved up against his estate in favor of the Brand heirs, it is not probable that he paid it in his lifetime, and we will concede that he did not. It nevertheless remains that it was paid by some one, and there was no competent evidence presented at the trial to show who paid it, except the evidence of Dr. Gerlich, who testified that Tolle paid it. The court below, in its decree, finds that it was paid, but does not find who paid it. Then, as to the statement in the opinion that Mrs. Tolle proved it up as a personal claim against Mr. Tolle's estate, it is said that we are mistaken in that. Well, it appears that it was proved up against the estate by Maria Theresa Bokamp and others, who were the heirs of Brand. But what then? Mrs. Tolle got the dividend, according to the affidavit which she made when asking for leave to intervene. The note was paid to the Bokamp heirs by some one. This is clear. Then, according to Mrs. Tolle's claim made in this affidavit, it was paid by

her out of her separate estate, and she took an assignment of it, and, as such assignee, received the dividend out of her deceased husband's estate, which would otherwise have gone to the Bokamp heirs.

Now, let us concede all that the plaintiff claims in respect of the facts of this case ; let us concede that the second note was not paid by Mr. Tolle in his lifetime, but that after his death Mrs. Tolle paid it out of her separate estate ; let us concede that she is the owner of it, and has received back from Mr. Tolle's estate but fifteen per cent of the amount which it represented at the time when the dividend to Tolle's creditors was made. And what then ? The result is not changed in the slightest. As stated in the opinion, Mrs. Tolle could not acquire any higher right to the trust-fund by paying this note than Mr. Tolle would have had had he paid it in his lifetime, nor would it have made made any difference in the result had she paid the third, the fourth, or even the fifth note. Upon obvious principles of equity, which we have endeavored to make clear in the opinion, and which were made clear in the opinion of the circuit court, as long as Tolle, or the estate of Tolle, stood indebted to the Brand heirs as surety for Barth, in a larger amount than the amount of this trust-fund, they, and not he or his creditors, are entitled in equity to this fund. The struggle over the question whether the credit should have been made upon the second note or upon the third note, ignores entirely this principle. It is utterly immaterial upon what note held by the Brand heirs the credit was made. It might just as well have been made upon the sixth note as upon the third note. The material thing is, that they get the money, and that Tolle's estate gets the proper credit, and that some one else does not get the money, and that a note held by some one else does not receive the credit.

We have decided this case upon an obvious rule of equity, that where a principal debtor sets apart a fund to

indemnify his surety against a liability which will probably fall upon his surety, and this liability accrues against the principal debtor and the surety, and both fail to discharge it, a court of equity will divert the fund to the payment of the common creditor; and it will none the less do this because the surety may have discharged some portion of the indebtedness for which he stood liable, provided that there remains unpaid a larger amount than the amount of the fund, for the payment of which he likewise stands liable.

We cannot hope to make ourselves more clear. From the first, the plaintiff's case has proceeded in the face of these obvious principles of equity. The motion for rehearing is overruled, Judge BAKEWELL concurring, Judge LEWIS not sitting.