## J. E. BROUSSARD, Respondent, v. B. C. MASON, Appellant.

Kansas City Court of Appeals, February 15, 1915.

1. EQUITY: Contribution: Trustee Ex Maleficio: Demand for Accounting. In a suit for contribution by one surety against another wherein the latter sets up that the former by his acts has become a trustee ex maleficio, defendant cannot demand an accounting before making contribution unless he makes some showing that his liability to contribute has been injuriously affected, and that an accounting will disclose that fact and is reasonably necessary. If the evidence offered in defendant's behalf leaves it an open question whether this liability to contribute has been affected then defendant is entitled to an accounting.

2. ———: ———: ———: ———. The facts in the case examined and held sufficient not only to show that plaintiff has constituted himself a trustee ex maleficio, but also that defendant's liability to contribute has been injuriously affected.

Broussard v. Mason.

3. ———: ———: ———: ———. An officer of a corporation becomes a trustee for the benefit of all parties interested when he obtains property of the corporation in a manner inconsistent with his duty to the corporation.

4. ———: ———: ———: ———: **Receiver.** A receiver of a corporation occupies a fiduciary relation and is a trustee for all parties in interest and cannot delegate his trust.

5. ———: ———: ———: **Fraud in Law.** If a course of procedure is a fraud in law it makes no difference what the motives of the persons are who engage therein. If such procedure results in a condition in which the whole affair is subject to doubt as to its effects upon the rights of others, then those adopting that course of procedure must stand the consequences however honest and pure their intentions may have been.

6. ———: ———: ———: **Cosureties.** Accommodation indorsers of a note occupy the relation of cosureties for the principal debtor. If one of them obtains property of such debtor under circumstances which make him a trustee, he not only holds it for the benefit of all directly interested in the assets of the principal debtor, but such property eventually inures to the benefit of all sureties of said debtor.

7. ———: ———: ———: ———. Where one surety obtains an indemnity it inures to the benefit alike of himself and his cosurety. And a surety who, having received property from his principal, and who has paid the whole debt, cannot maintain an action for contribution against his cosurety without showing that the property he received has failed to satisfy the debt for which contribution is asked, and if he has received only a partial indemnity he can recover only his cosurety's proportionate part of the balance.

8. **JUDGMENTS: Fraud: Collateral Impeachment.** Where there was fraud in the very procurement of a judgment, it can be collaterally impeached and is therefore not conclusive upon a court of equity in an investigation of the rights of parties to a suit in equity affected by the judgment.

Appeal from Jackson Circuit Court—*Hon A. C. Southern,* Judge.

REVERSED AND REMANDED.

*E. H. McVey* and *B. W. Simpson* for appellant..

(1) A judgment may be collaterally impeached for fraud and collusion. Under the circumstances here presented this court has the right to adjudicate the equities of the cause upon the merits. Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. 1. (2) An officer or director of a corporation who purchases its property at execution sale becomes a trustee for the benefit of the parties in interest. Tobin Canning Co. v. Fraser, 17 S. W. 25; Brewster v. Stratman, 4 Mo. App. 42 and 43; McAllen v. Woodcock, 60 Mo. 180; Ward v. Davidson, 1 S. W. 846, 89 Mo. 455. (3) When Broussard became trustee he was not at liberty to exercise his rights as creditor in opposition to his duties as trustee. Jamison v. Glascock, 29 Mo. 191, 197; Rogers v. Rogers, Hopkins Chancery Courts, 515; Grumley v. Webb, 44 Mo. 451; Connecticut Mt. Life Co. v. Smith, 117 Mo. 295; Tobin Canning Co. v. Fraser, 17 S. W. 25; Brewster v. Stratman, 4 Mo. App, 42-3; McAllen v. Woodcock, 60 Mo. 180; Ward v. Davidson, 89 Mo. 445; Hoffman v. Reichert, 35 N. E. 527. (4) Indemnity to one surety inures to the benefit of all. Urbahn v. Martin et al., 46 S. W. 291, 293; 19 Tex Civ. App. 93; Tolle v. Boeckeler, 12 Mo. App. 63; Chilton v. Chapman, 13 Mo. 336; Gibson v. Sheehan, 28 L. R. A. 400.

*Gilmore & Brown* for respondent.

(1) Even if such defense could be allowed, the questions attempted to be presented have been the subject of litigation in the Texas courts, where they have been adjudicated and those adjudications are binding upon this court. Kitchen v. Railroad, 69 Mo. 224; Foster v. Mill Co., 92 Mo. 79; Foster v. Refining Co., 118 Mo. 238, 264; Williams v. Jones, 23 Mo. App. 132; Neun v. Assn., 149 Mo. 74; Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. 1; Field v. Sanderson, 34 Mo. 542. (2) Defendant having pleaded fraud in the

foreclosure, cannot rely upon fraud in the original sale of the Rice Company. Wesley v. Bowers, 58 Mo. App. 419; Reed v. Bott, 100 Mo. 62. (3) An officer or director of a corporation may take security for a debt from the corporation and enforce payment as any other creditor. 21 Am. & Eng. Ency. of L., 911; Kittle v. Railroad, 84 Fed. 386; Rylander v. Sheffield, 108 Ga. 111; Bank v. Dovetail Co., 143 Ind. 534; Rollins v. Wagon Co., 80 Ia. 320; McMurty v. Remple Co., 86 Ky. 206; Holt v. Bennett, 146 Mass. 437; McDowell v. Shehan, 59 Hun, 618; Neal's Appeal, 129 Pa. St. 64; Bruce v. Hawley, 31 Ver. 643.

TRIMBLE, J.—The parties to this suit and one, B. D. Hurd, were accommodation endorsers upon a note of the Jefferson County Rice Company (a corporation), given on April 28, 1902, to the First National Bank of Beaumont, Texas. On October 14, 1903, plaintiff paid said note in full, amounting then to $3367.42. This suit for contribution was instituted against the defendant Mason and said Hurd, March 24, 1906. In his bill or petition plaintiff alleged that on the date he paid said note the Rice Company was, and ever since has been, insolvent and has had no assets from that date to the present time; and is therefore unable to pay said note or any part thereof; and on that account plaintiff prayed that each of the defendants be compelled to contribute one-third of the amount so paid by him on said note.

After suit was brought, Hurd made a satisfactory arrangement of some sort with plaintiff in consequence of which the suit was dismissed as to him.

Defendant Mason filed an answer setting up the defense that plaintiff was an original incorporator and stockholder in said Rice Company and was a director and the treasurer thereof from and ever since its organization to the present time; and that in violation of his duty as such director and officer of the corporation he

caused a receiver to be appointed therefor and had a secret understanding with the receiver that plaintiff was to be allowed to do all the work of the receivorship, care for all the assets of the company, and handle all the moneys due the receiver as such; that by means of his control of the assets and business of the receivership, plaintiff acquired to himself and now holds and claims to own all the property and assets of the Rice Company and destroyed the ability of said company to pay said note, and, by other fraudulent and wrongful practices, procured property in excess of the amount due him or paid by him; that by reason of the premises plaintiff is a Trustee *Ex Maleficio* and as such must make an accounting, and that the result of an accounting will be to show that plaintiff has already been indemnified.

Plaintiff filed a reply denying the facts alleged in the answer, and the parties went to trial. Being in equity, the case was tried by the court sitting as a chancellor.

The decree was in plaintiff's favor requiring defendant Mason to make contribution to the full extent of one-third of the amount paid with interest at six per cent from October 14, 1903, aggregating $1797.47. With reference to the defense set up in the answer, the decree recites that none of the matters therein alleged ''constitute any defense for this action, even if they are true; that for that reason the court declines to pass upon or decide the questions sought to be raised.''

This recitation in the decree is equivalent to sustaining a demurrer to defendant's evidence. If, as a matter of law, the facts charged in the answer do constitute a defense, or affect the liability of defendant, then it was error to refuse to pass upon them. And, in that event, if defendant's evidence is sufficient to support an inference that plaintiff has wrongfully and fraudulently deprived the Rice Company of its ability

to pay said note, or has lessened said ability so that the defendant's liability for contribution has been created, or has been increased, then the decree should not be allowed to stand. It is true, in the case of an ordinary trustee, the right of a beneficiary or party in interest to demand an accounting does not depend upon whether any amount is due or not, for in such case the relation of trustee and *cestui que trust* exists independently of that fact, and the latter has a right to an accounting in order that he may learn whether anything is due or not. But, in the case at bar, defendant's right to assert the trust relationship of plaintiff depends solely upon the question whether or not it is likely that the ability of the principal debtor to pay the note has been destroyed or lessened and defendant's liability to contribution has been thereby created or increased. No right of defendant's ownership or interest in the assets of the corporation is affected by this suit. His liability to contribution is the only thing that is affected. Hence, in this case, although he asserts that plaintiff is a trustee *ex maleficio,* yet he cannot demand an accounting before making contribution unless he makes *some* showing that his liability to contribute has been injuriously affected, and that an accounting will disclose that fact and enable the chancellor to render the particular decree which the equities of the case may demand. In other words, defendant is not entitled, as a matter of course, to an accounting merely upon showing that plaintiff, by reason of his official connection with the Rice Company and his acts in the premises, is a trustee; defendant must also show that there is at least a reasonable probability that his liability has been affected by the acts of such trustee so as to make an accounting reasonable necessary. For these reasons we say we must decide, *first,* whether the facts charged in the answer constitute a defense in whole or in part, and, *second,* whether the evidence is sufficient to support that charge or make an accounting

reasonably necessary. Of course, if the evidence dis-
closes beyond question that after an accounting had
been made, nevertheless defendant would still be re-
quired to contribute all that is asked, then it would be
needless, and a useless expense, to require an account-
ing. But if the evidence offered in defendant's behalf
shows that his liability has been wrongfully affected, or
even leaves it an open question whether it has or not,
then defendant is entitled to an accounting, provided,
of course, the first proposition is decided in the affirma-
tive.

The facts upon which defendant relies to con-
stitute plaintiff a trustee *ex maleficio* are as follows:

In 1899, J. E. Broussard, B. C. Hebert and I. D.
Polk, all residents of Beaumont, Texas, were the owners
of 10,424 acres of land in Jefferson county of that State.
Certain parties were contemplating the organization of
a corporation to purchase these lands and engage in
the rice growing business, and also to sell the land at
retail in small tracts to settlers from the north. Hurd
was the promoter and organizer of the scheme. On
December 26, 1891, the three owners of the land entered
into a contract with B. D. Hurd and A. H. McVey, trus-
tees for the stockholders of the proposed corporation,
whereby the owners agreed to sell said land to said
trustees or to such corporation as they might designate
for $185,000 of which $15,000 was to be in cash and the
other $170,000 secured by promissory notes secured by
recorded vendor's lien, which was the same as a deed of
trust, to secure that amount of the purchase price.

On May 14, 1900, the corporation was organized by
Broussard, Hebert, Polk, Hurd, Mason, and McVey,
and was called the Jefferson County Rice Company. A
few days prior thereto, to-wit, on April 26, 1900, these
last named parties entered into a secret agreement or
contract whereby they agreed to divide  a certain
amount of the stock among themselves for their services
and profits, that is to say, to Broussard and Hebert

$27,382.62 of the capital stock of said corporation, and to Mason, McVey and Hurd each $19,104.89 of such stock, and to Polk $1274.71 thereof, all payable one-tenth cash, balance in eight annual installments bearing seven per cent interest thereon.  It was further agreed that the sum of $79,001.11 of the vendor's lien notes should be divided among them in the following ratio: Broussard and Hebert were to have $25,154.60 of such notes, Mason, Hurd, and McVey were each to have $17,555.80 thereof, and Polk was to have $1179.11 thereof.  It was further agreed that the interest coupons on the vendor lien notes given by the corporation for the purchase price of the lands should be used to pay the interest on all stock subscriptions made to the corporation by said parties, and the notes themselves were to be used in payment of the stock subscribed for by said parties.  As ten per cent had been paid on the stock subscriptions it was thought and agreed that the said notes and interest would pay the stock subscriptions made by said parties and the interest thereon.

Pursuant to the contract of December 26, 1899, the land was conveyed to the corporation and the vendor's lien notes were executed.  It was the intention of the several contracts that the three owners of the land should receive $9.50 per acre therefor in addition to the amount of stock subscribed by each.

It seems that the business of· rice growing did not prosper.  It is a business requiring continuous fresh water irrigation, and salt water is injurious thereto. The land was adjacent to Taylor's Bayou an inlet of a fresh water body known as Lake Sabine located a short distance from the Gulf of Mexico.  A ship canal, built in 1899, had connected this Bayou with the Gulf, and as there was no current in the Bayou, when large quantities of water were taken therefrom it caused a back flow of salt water into the Bayou which injured the rice.  The plaintiff Broussard knew this at the time the land was sold but whether the purchasers did or not is

perhaps disputed. At any rate the salt water was a material factor in injuring the rice growing business of the company.

The Beaumont Rice Mills was a partnership largely owned and controlled by the plaintiff. It held a claim for over $4000 on the Jefferson County Rice Company, and on October 9, 1903, suit was instituted on said claim. Defendant, in the case at bar, lived in Iowa. Plaintiff Broussard was director and treasurer of the Jefferson County Rice Company, and, as stated, lived in Beaumont, Texas. On October 17, 1903, in the suit by the Beaumont Rice Mills against the Jefferson County Rice Company, Broussard had his brother-in-law I. D. Bordages appointed receiver of the Jefferson County Rice Company and had a private understanding or agreement with him that he should be only a nominal receiver and leave the actual management of the receivership affairs to Broussard to be conducted by him and a firm of Beaumont attorneys who were attorneys for the Rice Mills, plaintiff in the receivership suit, and who were also Broussard's attorneys, and for the receiver. Broussard made an arrangement with said firm of attorneys whereby they were to attend to all matters in the receivership for $2000, and this firm thereafter seems to have acted for all parties connected therewith or involved therein.

On December 7, 1903, Broussard and Hebert, through the above mentioned firm of attorneys, intervened in the receivership proceedings and asked permission to foreclose on the vendor's lien notes given to them for the unpaid purchase price of the land, and obtained an order directing the receiver to enter his appearance to the foreclosure suit, and thereupon the receiver entered his appearance therein and consented to the foreclosure, all of which was done by said attorneys.

Neither Broussard, Hebert nor Polk had paid their stock subscriptions and they did not own near all of the

lien notes, but notwithstanding this fact the foreclosure suit against the Rice Company included all of them and judgment was rendered for $205,916.08 with interest and costs. The receiver made no defense, paid no attention to the case and whatever judgment was desired was allowed to be taken. Nor did he look after any of the other receivership affairs.

Under this judgment an order of sale was issued February 8, 1904, and the lands were sold to Broussard and Hebert for $37,000 which, less costs, was credited on the judgment leaving a balance of $172,-480.40 due on the foreclosure judgment.

All of the assets of the receivership were handled by the Beaumont Mills, which was dominated and controlled by Broussard.

There was approximately $20,000, according to plaintiff's evidence, spent in improvements on the land, such as houses, buildings, etc., and also in the purchase of certain wagons, mules and other personal property used in the work of tilling the land. All of these were sold or disposed of without any orders of court and no accounting has been had by the receiver, he not looking after the affairs of the receivership in any way; and whatever account has been kept has been by the Beaumont Mills on its books.

At the time of the receivership there was a large number of unpaid stock subscriptions due to the corporation amounting to $178,817.30. A number of orders were made in the receivership matter in reference to these. First, the parties holding the stock called for by these subscriptions were enjoined from selling or disposing of them, then an order was made assigning these claims for unpaid stock to Broussard and Hebert and they were to sue for them in their own name, and finally an order was made to sell all of these unpaid stock subscriptions at private or public sale, and Broussard bought them in for $500.

Suit was brought by him on several of these stock claims against stockholders, and one was tried in the United States District Court at Council Bluffs. In that case the fraudulent character of the receivership was in issue and the court found that Broussard was a trustee for all stockholders and that he had obtained all the assets of the corporation and could not be allowed to recover against the stockholder. Thereupon the stock claims so bought by him were turned back to the receiver and the $500 paid therefor, by a mere credit on the books, were repaid by cancelling that credit. But the receivership is still being conducted in the same way as before. No claims against the receiver have been adjudicated except in the foreclosure proceeding which was in effect no adjudication, since it was really an *ex parte* affair. The assets of the corporation have never been liquidated, nor has there been any judicial determination concerning the assets and liabilities of the corporation.

The land was sold by Broussard and his co-owner to the corporation for $18.50 per acre and bought back, after improvements had been made upon them, for $3.60 per acre under a proceeding in which the rights of the corporation and its creditors were not looked after nor safeguarded in the least, though that is supposed to be the prime object and purpose of a receivership. According to plaintiff's evidence the land was worth between $12 and $14 per acre when it was sold to the corporation and $7 or $8 per acre when he bought it back for $3.60, and at the time of the trial had risen again to between $10 and $13 per acre.

It would seem from the foregoing facts that the plaintiff in this case has acquired all the assets of the corporation, has obtained a judgment against it for more than he is entitled to, has had charge of all the affairs thereof, and not only has no effort been made to determine the assets and liabilities of the corporation, or to pay any debts thereof except plaintiff's,

but also that no effort has been made to collect the claims due the corporation on unpaid stock so as to enable the corporation to discharge its obligations, and that no steps have been taken to obtain a judicial determination of its financial condition or ability to meet its obligations although a proceeding exists in court, and has for years, for that very object and purpose. It would also seem that these things were done in violation of plaintiff's duty to the corporation, and that so far, at least, as appearances now go, defendant's liability is wrongfully affected.

It is true, plaintiff insists that the fluctuating value of the land was caused by the coming of the salt water and the collapse of the oil boom. But it is clear that the land is valuable, or at least worth much more than what he paid for it at foreclosure, for other purposes than mere rice growing, and the improvements placed thereon are suitable for other purposes as well. It is also true that plaintiff claims no fraud was perpetrated in the matter; that the affairs were thus handled for purposes of economy. But if a course of procedure is a fraud in law it makes no difference what the motives of the persons are who engage therein. And if a course of procedure which the law declares must not be taken, results in a condition in which the whole affair is subject to doubt as to its effects upon the rights of others, then those adopting that course of procedure must stand the consequences, however honest and pure their intentions may have been. At any rate, in this kind of a case, it is incumbent upon them to show in the clearest and most explicit manner that, regardless of the situation, defendant's liability remains as it was and has not been affected.

An officer or director of a corporation becomes a trustee for the benefit of all parties interested when he obtains property of the corporation in a manner inconsistent with his duty to the corporation. [Brewster v. Stratman, 4 Mo. App. 41, l. c. 42; Tobin Canning Co.

v. Fraser, 17 S. W. 25; 2 Cook on Corporations, sec. 653, p 1910; McAllen v. Woodcock, 60 Mo. 174, l. c. 180; Shields v. Hobart, 172 Mo. 491; Kittel v. Augusta, etc. R. Co., 78 Fed. 855; Raleigh v. Fitzpatrick, 11 Atl. 1, l. c. 11.]

The receiver occupied a fiduciary relation and was a trustee for all parties in interest, and he could not delegate his trust to Broussard or any one else. [Shadewald v. White, 77 N. W. 42.] Broussard not only could not take any undue advantage of the corporation in opposition to his duty as a director and officer, but he had no right to substitute himself for the receiver and, in fact, be the receiver, under any sort of an agreement or understanding with that official. Broussard's acts in this capacity were void or at least voidable. Plaintiff could not in this way exercise his rights as creditor since he would be necessarily occupying two different and antagonistic positions. [Jamison v. Glasscock, 29 Mo. 191, l. c. 197; Grumley v. Webb, 44 Mo. 444; Conn. Mut. Life Ins. Co. v. South, 117 Mo. 261.]

It does not seem to be seriously contended that the foregoing facts do not create a fraud in law, but plaintiff's objection to such as a defense or to their forming a basis for defendant's demand for an accounting before he can be called on for contribution, seems to rest upon the contention that they grow out of outside matters and hence defendant cannot urge them in this suit, and if he could, he would still have to contribute anyway. With reference to this last, we merely desire to say that plaintiff's course of procedure, whether from an honest and innocent motive or not, has at least resulted in leaving the question of its effect on the corporation debtor's ability to pay so hopelessly confused and muddled as not to justify us in saying that defendant has made no reasonable showing that his rights as a co-surety or endorser with plaintiff have not been injuriously affected. We think that, on the

face of things at least defendant has established a right to require an accounting of the trustee *ex maleficio* if he has any right to raise the question of plaintiff's trusteeship in this case.

On this feature of the case it is to be observed that plaintiff and defendant occupy the relation of co-sureties for the debt of the corporation represented by the note which plaintiff has paid. And if plaintiff has obtained property of the corporation under circumstances which makes him a trustee and which he has no right to withhold from the corporation it not only inures to the benefit of all directly interested therein, but also and eventually inures to the benefit of all sureties of the corporation. If the liability of the co-surety is affected in any manner by the trust relation the other surety occupies toward the principal debtor, then surely such co-surety has the right to raise all questions growing out of such trust relation. The fact that plaintiff had an individual debt or claim against the Rice Company does not give him a right to violate his duty toward that company or prevent defendant from objecting to the result of that violation if his own rights in this case are prejudicially affected. So that, in reality, owing to the circumstances of this case, i. e. the obtaining of the company's assets by plaintiff in violation of his duty as an officer thereof, and the consequent lessened ability of the corporation to pay its debts and thereby relieve its sureties of their liability to pay, the parties to this case are in the same situation as if they were not connected with, or interested in any way in, the corporation except as co-sureties. It is well settled that where one surety obtains an indemnity it inures to the benefit alike of himself and his co-surety. [Sanders v. Weelburg, Extr., 107 Ind. 255; Gibson v. Sheehan, 28 L. R. A. 400; Chiltin's Admr. v. Chapman, 13 Mo. 470, l. c. 472.] A surety who, having received property from his principal, and who has paid the whole debt, cannot maintain an action

for contribution against his co-surety without showing that the property he received has failed to satisfy the debt for which contribution is asked, and if he has received only a partial indemnity he can recover only his co-surety's proportionate part of the balance. [Sheldon on Law of Subrogation, sec. 142.] And one surety obtaining security for the payment of the debt does so for the benefit of all. [Ibid., sec. 143; Urbahn v. Martin, 46 S. W. 291.] A breach by one surety, of his duty to his co-surety, causing a loss to the latter, is, *to that extent,* a legal and equitable defense in his behalf against any claim of the former for contribution. [In re estate of Koch, 148 Wis. 548.]

So long as the course of procedure on plaintiff's part, of which defendant complains, has resulted or reasonbly appears to result in injury to defendant's rights as a co-surety, it is not seen how defendant can be debarred from making such complaint on the ground that plaintiff's wrongful conduct has grown out of other transactions. The ground on which such defense is permitted in this kind of suit is that he who seeks equity must do equity. And since a court of equity, when it once acquires jurisdiction of a cause, will follow it into all of its ramifications in order to do full and complete equity, it is not easy to see how the transactions complained of can be said to be outside matters. Especially is this true when they bear directly upon the corporation debtor's ability to pay and that in turn directly affects defendant's liability to contribute.

But it is said the judgment in the Texas courts prevents any investigation into the matters complained of here. We cannot agree to that proposition. The judgment of foreclosure rendered under the circumstances hereinabove stated is not conclusive upon a court of equity in an investigation of the respective rights of the parties herein. [Wilson v. Kiesel, 35 Pac. 488.] The method adopted in the very procurement of the judgment worked a fraud in law, and this

will allow the collateral impeachment of the judgment. [Van Fleet on Former Adjudication, 998; James v. Central Trust Co., 98 Fed. 489; Jones on Insolvent Corporations, sec. 391; Bissett v. Kentucky River Nav. Co., 15 Fed. 353; Ball, Trustee v. Rees, 58 Kan. 614; Barron v. Paine, 83 Me. 312; Heggie v. Peoples Building and Loan Assn., 107 N. C. 581.]

It follows from what has been said that the matters charged in defendant's answer can be raised in defense of this suit for contribution. We do not say that they bar all right of plaintiff for contribution against defendant, because the evidence does not show that plaintiff has obtained enough property to fully indemnify him for all he paid out on the note which the parties to this case endorsed. An accounting may disclose that or may not. But if the amount defendant is asked to contribute will be, or may likely be, reduced, then defendant is entitled to an accounting in accordance with the prayer of his answer, before he can be made to contribute in any sum. Under the circumstances it is not incumbent upon him to show the details of the transactions and the extent to which his liability is reduced. Plaintiff has made himself a trustee and he must show those details and what is yet due him in order to recover of his co-surety. If plaintiff's course of conduct has resulted in the corporation being unable to now obtain assets it would otherwise have gotten, for instance, its stock subscription claims, this would bear upon plaintiff's right to contribution as well as the other matters hereinabove referred to. But all these things can be determined upon a retrial of the case when all of the matters raised by defendant's answer will be considered, passed upon, and decided by the chancellor. That can be done by him on a retrial and with greater justice to both sides than we could do even if we were to attempt to pass finally on the rights of the parties on the record now before us. Hence we do not agree with defendant in holding that the decree be

reversed outright, but reverse it and remand the case for another hearing in accordance with the procedure herein indicated. All concur.