JAMES HARRISON, Appellant, *v.* ANSYL PHILLIPS, Respondent.

1. *Revenue — State collector defaulting, sureties of — Money deposited by collector, recovered by surety in garnishment proceedings, will be held in trust for remaining sureties, when.* — After the debt due by a defaulting principal has been paid by his sureties, in ratable proportions, each of them becomes an independent creditor of the principal, and if any one should succeed in collecting his debt, the other creditors would have no claim whatever upon that fund.

But when the principal is a State collector the rule is different. The moment collections come into his hands they become the property of the State. Under the law (Sess. Acts 1863, p. 76, § 49) it became his duty to deposit them in the Bank of the State of Missouri; but his failure to do so would not operate to divest the State of its specific interest, and it might follow the fund, by suitable action, into any bank where deposited, and fasten upon the account created by it. Nor can the requirement of his official bond, with summary remedy upon default, be construed as divesting the title of the State to that fund. Such a deposit becomes a debt to the State, and none the less so because the collector might have discharged it by drawing out the money. And where the sureties on the collector's bond were compelled to pay out a liability on his part which this fund, if collected, would have gone to extinguish, it should, in equity, be transferred to such sureties.

Hence, if one of the sureties brings suit against the collector for the ratable share paid out by him, and recovers the sum by garnishment against the bank where the fund was deposited, on every principle the sum should be held by him as trustee for the use of all the sureties as the equitable owners, and no superior diligence on the part of the attaching surety could despoil the others. It is not as among equal judgment creditors, where the first levy gives the priority; for in that case there is no ownership, but only a lien, and the levy and sale become necessary to transfer the property. But the surety, in making contribution, will be entitled to deduct the costs and expense incurred by him in collecting the amount.

*Appeal from St. Louis Circuit Court.*

Edward W. Shands was duly appointed and qualified as collector of the State and county revenue within and for the county of St. Louis, in the State of Missouri, for the year 1860, and until his successor should be duly appointed and qualified. The said Shands filed his official bond for $500,000, dated February 23, 1860, wherein said Shands was principal. The bond was conditioned for his faithful discharge of his duties as collector, and paying over to the State and county aforesaid all money collected. Shands, while acting as collector and holding said office, failed to pay over the sum of $24,483.18 of the revenue

collected by him or his deputies; and on the 23d day of June, 1862, the State of Missouri, through its auditor, Wm. S. Mosely, sent a copy of said Shands' account as collector to his sureties, showing said balance of $24,483.18 against him, and calling upon them for payment in order to avoid further steps. Thereupon the solvent sureties paid in said amount, each paying an equal portion thereof.

Said Shands, of the revenue so collected by him, deposited the sum of $2,878.83 in the State Savings Association of St. Louis, which sum was not made a special deposit, but was deposited in his name as collector.

On the 11th day of December, 1863, the defendant in this suit, Ansyl Phillips, instituted an attachment suit in his own name against Shands to recover the money paid by said Phillips to the State of Missouri, as bondsman. In this suit Phillips caused said State Savings Association to be garnished as the debtor of said Shands, and, after regular proceedings to that end were had, recovered of the garnishee the said sum of $2,878.83, less $39.15, costs of said suit.

*Cline, Jamison & Day,* for appellant.

I. When the sureties made good the deficit to the State, in equity all right to the money at the State Savings Association passed from the State to the contributing sureties in proportion as they had paid, subject only to all equities of innocent holders and claimants; and its acquisition by one of the sureties at any time thereafter, whether by legal process or voluntary payment, would in equity inure to the benefit of all, and could in no wise break the right thereto that resulted in their favor at the instant they paid the State. The diligence of one in reducing it to possession is the diligence of all, subject to all reasonable expenses incurred in getting the same, as their relation to each other in reference to this fund disabled each from acting for himself in reference thereto as against the interest of the others. The relation they bore to each other and to this fund made each one a trustee for all in relation thereto, and disabled each from acting for himself alone in its acquisition. (Furnold v. Bank of the

State of Missouri, 44 Mo. 336 ; Seeley's Adm'r v. Beck, 42 Mo. 143 ; Cole County *et al.* v. Price *et al.*, 12 Mo. 132 ; Miller v. Woodward *et al.*, 8 Mo. 169 ; McCune v. Belt *et al.*, 38 Mo. 293.) Had this been the money of Col. Shands, the defaulter, and not the property of the State, then the rule would be different, and no equity could attach thereto as between these sureties. Vigilance could then claim her reward.

II. The extraordinary remedy of distress provided by the statute, in the first instance, against the collector and his sureties in case of default on the bond (R. C. 1855, pp. 1542–4), takes from the State none of the ordinary rights secured to it by law to pursue any remedy the State should see fit to adopt in the premises to secure money or its proceeds, belonging to the State, in the hands of her defaulting trustee or officer, whether in his possession or placed by him in the hands of another, or any property or chose in action into which it had been unlawfully converted by the agent of the State.

*Ewing & Holliday*, for respondent.

I. The liability of the defendant can be maintained only, if at all, upon the theory that a surety who pays a debt is entitled to stand in the place of the creditor as to all liens and equities to which he has a right to look as a security for the payment of his debt. The present case can not come within the operation of that principle, unless it be shown that before and at the time the plaintiff and other sureties of Shands paid the debt of the latter to the State, the State had a valid and subsisting lien upon the indebtedness of the State Savings Association to Shands — such a lien as a court of equity would have enforced at its instance for satisfaction of its debt. (1 W. & T. Lead. Cas. Eq. 131–72 ; 4 Metc., Ky., 247.) Shands was the collector of the revenue, and gave bond for the faithful performance of his duties. This was the only indemnity the State ever had. Shands, by the deposit of money with the State Savings Association, became its creditor, and the same relation of debtor and creditor was thereby created that results from a deposit in any other case. The deposit by Shands was neither to the credit of the State nor the

county, and whether to the credit of Edward Shands, or to Edward Shands, collector, is wholly immaterial. How could the State have a lien under such circumstances? This money, when deposited, passed into the funds of the bank, and the bank became liable to Shands for the amount of money deposited, and not for any specific fund. The bank became the debtor of Shands, and of no one else. The remedy provided for the State to recover this amount due from the collector on settlement is most summary, full, and complete—by the issue of a warrant of distress against such delinquent and his securities. (R. C. 1855, p. 1542, § 3.) The remedy is summary and complete as long as the principal or sureties are solvent, and there could be no equity if the redress is complete at law; and, on this distress warrant, the bank could have been garnished immediately for this very indebtedness. No resort to equity is necessary to reach this indebtedness.

II. The State had no lien upon this indebtedness of the State Savings Association to Shands, because the money deposited, that created the indebtedness, did not belong to the State. Shands was collector of the State and county revenue. It was his duty also, under the law, to collect the school fund. The State taxes and county taxes are, by law, assessed in the same tax book and collected on the same tax bills. For the State taxes the collector is responsible to the State, and for the county taxes to the county. It can not be said that the collector receives any certain distinguishable part of the money collected by him for State taxes, and another distinguishable part for county taxes. An action of replevin, or for the claim and delivery of personal property, as we now term it, could not lie in favor of the State against the State Savings Association for this money, even had Shands made a special deposit of the actual money collected by him.

III. The sureties in this case each paid his own proportion separately; consequently their legal demands against the principal are in their nature several, and they can not join in suing the principal. (Messer v. Swan, 4 N. H. 482, 488; Lombard v. Cobb, 14 Me. 222; Gould v. Gould, 8 Cow. 168.) In all the

reported cases where sureties have been compelled to divide with their co-sureties, the money or property so divided will be found to have been received while the interests of the sureties were joint and not several. In the case at bar, nothing was received by Phillips until nearly two years after each of the sureties had paid his several portion of Shands' indebtedness to the State. (Agnew v. Bell, 4 Watts, 31, 33.)

IV. When the sureties paid the debt they were at once subrogated to the rights of the State, if any, and entitled to enforce, each for himself, all the State's liens, priorities, and means of payment. Their claims against Shands being several, all stood on an even plain as to liens, rights, and priorities. The principle or maxim then applies, *vigilantibus non dormientibus jura subveniunt.* Where judgments have equal effect as liens upon the real estate of the debtor, the creditor who first levies his execution upon the land subject to the lien thereby acquires a priority and is entitled to be first paid out of the proceeds of the sale. (Bruce v. Vogel, 38 Mo. 100; Smith v. Lind, 29 Ill. 24; Adams v. Dyer, 8 Johns. 347; Waterman v. Haskins, 11 Johns. 228.)

BLISS, Judge, delivered the opinion of the court.

The right of the plaintiff to a proportionate share of the money recovered by the defendant depends entirely upon the relation held to it by the State. If it had become the property of the State and not before credited to Shands, or if the State had any specific claim to or lien upon it, as security for his debt, then the sureties of Shands, by the payment of his defalcation, became subrogated to the rights of the State; they are each entitled to a share of the fund, and the defendant has collected what belongs to them all. (W. & T. Lead. Cas. 3d Am. ed., 144-6, notes and cases cited; Furnold v. Bank of the State of Missouri, 44 Mo. 336; Sarpy's Adm'x v. Berthold, *post*, p. 557.) But if the money deposited was simply the private property of Shands, if the Savings Association held it for him personally, and could at any time have been exonerated by paying it to him, and had no right to pay it to any one else, then the State had no specific

interest in it, nor did the sureties therein derive any, and the interest they or any of them might subsequently acquire possesses the same character and attaches the same obligation as though acquired in any other property.

We will, then, first inquire whether, if one of several sureties, after the settlement and liquidation of the claim, and the payment of his proportionate share, shall, upon his own motion and without the aid or co-operation of his co-sureties, procure by attachment or otherwise a reimbursement out of the property of the principal, he is bound to share such reimbursement with the co-sureties.

After the default is satisfied by the payment by each surety of his proportionate share, it is well settled that their claims upon the principal become thereby several and not joint ones. (Gould v. Gould, 8 Cow. 168.) After the debt is thus paid, each surety becomes an independent creditor, and stands in the same relation to the principal and to his co-securities as any other independent creditor would stand in to a common debtor and other creditors, if their equities were equal. It is not pretended that in the latter case, if the creditor should succeed in collecting his debt, the other creditors would have any claim whatever upon the fund; and if not, upon what principle can co-sureties, whose claim has thus become several, demand an interest in what one of them may be able to collect of his debtor?

Upon this subject the Supreme Court of New Hampshire uses the following language: "It is a well-settled general rule that the demands of sureties against the principal, for money paid by them severally, are in their nature several, and that they can not join in a suit against the principal. (Brand v. Boalcott, 3 B. & P. 235; Pearson v. Parker, 3 N. H. 366.) On what ground, then, can a surety claim any portion of what a co-surety has received in satisfaction of his separate claim? We think there is no ground on which such a claim can be sustained." (Messer v. Swan, 4 N. H. 488.)

As to the separate rights of general creditors, it was held in Bruce v. Vogel, 38 Mo. 100, and such is the settled law, that even when they had judgment liens of even date upon the same

property, thus giving them a specific claim upon it, the creditor who first sued out execution and levied upon the property was entitled to the preference.

The question now under consideration has nothing to do with the admitted obligation of each surety to apply to the benefit of all any security or fund belonging to the principal; which he may hold or have held previous to the payment of the obligation, but only concerns subsequent individual recoveries.

The plaintiff, then, has no claim upon defendant merely because of their relation as co-sureties, and we have only to inquire whether the State had any such interest in the money garnished as would give the sureties any equitable rights under the doctrine of subrogation.

The deposit account was kept in the name of "E. W. Shands, collector." It embraced his official collections only, no private funds being mixed with it. If the money, as fast as collected, belonged to the State and county, no difficulty arises in consequence of its deposit and from the fact that the specific currency became mixed with that of the institution. The claim of the State and county follows the fund and fastens upon the account created by it. There might, in some cases, be a difficulty in determining the relative rights of the State and county, but it seems to be implied, in the agreed statement of facts, that this deposit consisted of State funds only. There was but one bond. No defalcation to the county is spoken of, and I assume that none existed. The share, then, of the collections belonging to the county had been paid over, leaving the money in dispute as collected for the State alone.

I can not entertain a doubt as to the main proposition, that collections by a public officer, from the moment they come into his hands, become the property of the public authority for whose use they are collected. The collector is a public agent, and becomes a trustee of the fund. If it is to be considered his private property until paid over, what is to hinder a levy upon it by his private creditors? How can his sureties feel assured that he will not be forced into a forfeiture of the bond, be he ever so faithful, unless saved by his solvency or the forbearance of his

creditors? They may thus be forced to become guarantors to his general creditors instead of to his fidelity as collector.

It was the duty of Shands, under the act of March 27, 1861 (Sess. Acts 1863, p. 76, § 49), to make monthly deposits of his collections for the State in the Bank of the State of Missouri, to the credit of the treasurer, under penalty; and when he did this his agency ceased as to the amount deposited, and his liability would be so far canceled; yet his failure could in no manner operate to divest the State of its specific interest, and the fund could have been followed by suitable action wherever it could be found. Nor can the requirement of a bond, with the summary remedy upon default, be considered as having that effect. I can not see even its tendency in that direction. The demand of security for the faithful collection of the assessment and paying over its proceeds can in no legitimate way be construed as a yielding up by the State of its title to what is collected for its own use. It is not a sale of revenue, like a species of oriental farming, transferring it for a consideration, but simply the employment of the necessary agent, who is required to give the necessary security.

The deposit of the property of the State in the Savings Association created a right in the State to follow it up and compel the association to account for it. It became a debt to the State, and none the less so because its agent, the collector, might have discharged it by drawing out the money. The State having compelled the sureties to pay a liability which this fund, if collected, would have extinguished in part, it should in equity be treated as transferred to such sureties. Had the collector paid the State and satisfied his bond, this deposit would have become his. The same thing done by his sureties would transfer it to them.

If it be claimed that this has been adjudged to have been the property of Shands, and judicially transferred to defendant, it may be replied that this can not affect the equities of his co-sureties, not having been parties. Shands is divested of title by judgment if he had any; the State, if it still owned the fund, would not be; nor are those to whom in equity it has been transferred. Defendant obtained the fund and the title as against all

others, but upon every principle he should be held to hold it for their use as the equitable owners.

The books abound in cases that sustain the equitable assignment under consideration, but most of them arise where the principal has turned over to the creditor some specific security, of which the latter could have availed himself. The equity, however, does not arise from the voluntary act of the principal, but from the possession by the creditor of a security or fund which, in equity, ought to be appropriated to discharge the debt. If he does not so appropriate it, but compels the sureties to pay the obligation, the law turns it over to them, and in proportion to their advances. They become at once, not by contract, but upon the principles of natural justice, the equitable owners of the fund, and no superior diligence in one can despoil the others. If he collects the whole fund, he must, as in other cases, hold it as trustee for all the owners. (McCune v. Belt, 45 Mo. 176.) It is not as among equal judgment creditors, where the first levy gives the priority; for in that case there is no ownership, only a right; and the levy and sale became necessary to transfer the property. From a careful consideration of the facts and the law, I can see no principle that would entitle the defendant to the whole of this fund. The costs and expenses of collecting it should be allowed him, and the remainder should be divided equally among those who paid the debt.

The plaintiff was entitled below to a judgment for his proportionate share, and the judgment against him is reversed and the cause remanded for such judgment to be entered, unless some new facts shall be developed. The other judges concur.