### A. URBAHN V. RAYMOND MARTIN ET AL.

Delivered May 25, 1898.

**1. Principal and Surety—Rights of Cosureties.**

Security which one cosurety on an official bond takes from the principal after the execution of the bond and before the sureties have paid the amount of the liability incurred in equal proportions, inures to the common benefit of all the sureties.

**2. Same—Surety on Different Bonds.**

A cosurety who is also surety for the same principal to a third person has a right to take indemnity from the principal against loss on the liability to such third person, and the other cosurety has no right to participate in such indemnity; but where security is taken generally from the principal for his indemnity by one who is surety on different bonds with different cosureties, and after he is bound, it is to be apportioned upon all the demands pro rata.

**3. Same—Separate Indemnity After Payment.**

After the debt of the principal is paid by several sureties in equal proportions, the equities between them as cosureties cease, and each becomes an independent creditor of the principal for the amount paid by him, and if one surety receives indemnity from the principal, the others are entitled to no part thereof.

APPEAL from Webb. Tried below before Hon. A. L. McLANE.

*J. O. Nicholson,* for appellant.

*John A. Valls* and *Dodd & Mullaly,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee against Thomas Ryan, Dario Sanchez, and Albert Urbahn to recover of Ryan the sum of $7728.20 paid by Martin for Ryan to Webb County, as surety on Ryan's bonds as county treasurer of said County, and to foreclose a mortgage lien given on the 13th day of November, 1896, in the form of a deed on certain real estate by Ryan to Martin, to indemnify the latter as such surety, and against Sanchez and Martin to cancel a certain deed of revocation and deed of trust made by Ryan to Sanchez to secure both Martin and Urbahn against liability as cosureties on Ryan's bonds as county treasurer of Webb County. By his answer the appellant, Urbahn, claimed that as cosurety with Martin he had also paid the sum of $7728.20 of Ryan's indebtedness to said county, and that the mortgage in the form of a deed made by Ryan to Martin inured to his benefit as well as to Martin's, and that he was entitled to have such lien declared upon the property described in said mortgage, and the mortgage foreclosed in his favor as well as in Martin's, and the proceeds under fore-

closure sale appropriated equally to the payment of such judgment as he and Martin might recover against Ryan by reason of their paying, as sureties, Ryan's debt to Webb County.

The case was tried by the court without a jury, and upon the facts found by the trial judge, which are substantially those found by this court, judgment was rendered in favor of Martin and Urbahn each against Ryan for $7728.20 with interest from date of judgment, and in favor of Martin for foreclosure of the lien claimed by him upon said real property, and against Urbahn on his claim for an equal lien on said property with Martin—it being adjudged that Martin had no lien thereon. From which judgment this appeal is prosecuted.

*Conclusions of Fact.*—On the 13th day of November, 1896, Thomas Ryan was the county treasurer of Webb County, Texas, and Albert Urbahn and Raymond Martin were cosureties on his official bonds. On and after that date Ryan as such treasurer was indebted to Webb County in the sum of $17,000, for which indebtedness he, together with his said sureties, was liable on his official bonds. Ryan being unable to pay said indebtedness on said date executed and delivered to Raymond Martin, one of said sureties on his bond, an instrument in the form of a deed, whereby he conveyed certain lands in the counties of Webb and Encinal, Texas, which deed recites a consideration of $5000. At the same time he executed to Martin another instrument in the form of a deed, by which he conveyed him certain lots in Bexar County, Texas, for the express consideration of $1000. No consideration was in fact paid by Martin to Ryan for said property, but the instruments were intended as mortgages to secure him as surety on Ryan's official bonds against liability thereon.

The testimony is conflicting as to whether or not said instruments were made with the intention of securing both Martin and Urbahn against liability on said official bonds, or with the intention of securing Martin alone. But as the trial judge in his conclusion of fact found that they were made with the intention of securing Martin only, and there is evidence to support such finding, we have on this question adopted his conclusions.

On the 7th day of December, 1896, Thomas Ryan executed and delivered to Dario Sanchez, as trustee, a certain deed of trust upon the property conveyed by the deed first above referred to, which in substance recites that it was executed for the purpose of securing Raymond Martin and Albert Urbahn as sureties on his two official bonds as treasurer of Webb County, and it provides that in case Albert Urbahn and Raymond Martin, or either of them, are compelled to pay, as sureties on said bonds, any sum of money because of the grantor's default as principal, then Dario Sanchez shall be fully authorized and empowered at the request of said beneficiaries at any time after payment by them as sureties to sell said property to the highest bidder for cash, at public outcry at the courthouse door, and to receive the proceeds of sale and apply them to the payment of said sum or sums of money that may

be so paid by Albert Urbahn and Raymond Martin as sureties; the interest accruing thereon in this deed of trust bears date the 11th day of November, 1896, it having been prepared at the instance of both Martin and Urbahn on that day for the purpose of obtaining from Ryan the security indicated by said instrument. But when it was presented to Ryan by the parties representing both sureties, for his signature, he refused to sign it until the said sureties would pay the amount he was then due the county, and it was not in fact executed by him until the 2d day of December, 1896, after he had made the deeds aforementioned to Martin, and they had been placed upon record. At the time Ryan executed this deed of trust he also executed an instrument and had it placed upon record, in which it is recited that the deed to Martin of November 13, 1896, which conveyed the lands in Webb and Encinal counties, was intended by him to be made to both Martin and Urbahn for the purpose of indemnifying them against any amount that they might pay on his official bonds, and that he thought when he signed the deed that it was made to both of them. After these recitations the instrument concludes as follows: "And I hereby repudiate said instrument purporting to be an absolute warranty deed from Raymond Martin to myself, and declare that I never intended to convey to said Raymond Martin by said instrument the property therein described, for a more particular description of which reference is hereby made to said record of said instrument. I further declare that I never received any compensation whatever for the execution of said intended warranty deed which bears date the 2d day of December, 1896."

On the 7th day of November, 1896, Thomas Ryan made to Albert Urbahn a chattel mortgage of that date, by which he conveyed to Urbahn his undivided one-half interest in all cattle and horse stock belonging to the firm of Ryan & Sullivan ranging in Encinal County, Texas, and elsewhere, which recites in substance that it was given to secure Albert Urbahn, an indorser for Ryan on his note payable to the Milmo National Bank for the sum of $29,190.59, with interest at 10 per cent after maturity. At the same time Ryan executed to Urbahn another chattel mortgage conveying an undivided one-half interest in all cattle and horse stock belonging to Ryan & Sullivan in Dimmit County. Also his undivided one-half interest in all goats, cattle, and horse stock belonging to the firm of Level & Ryan in Dimmit County, Texas. This mortgage also recites that it was given to secure Urbahn as indorser on the same note for $29,190.59 in favor of the Milmo National Bank mentioned in the other chattel mortgage. The note referred to in this chattel mortgage was on November 7, 1896, made by Ryan to the Milmo National Bank for the sum stated, and indorsed by Urbahn. Twenty thousand four hundred dollars of this note was for money then actually due by Ryan to said bank; the balance of the money specified in the note was for the joint indebtedness of Urbahn and Ryan to said bank. Two thousand five hundred dollars of the indebtedness of Ryan covered by said note has been paid by Sullivan. Nothing else has been paid on the note, and it is

still due the bank. The mortgages before mentioned made to Urbahn and Ryan to secure the latter as indorser on the note, were transferred by Urbahn to the bank upon the day they were executed, and are still held by the bank as security for the amount due on the note. The value of the property covered by these chattel mortgages is about $17,000. The value of the property conveyed to Martin by the deeds first mentioned is four or five thousand dollars. Ryan was insolvent on November 7, 1896, and has so continued to the present time.

As sureties on the official bonds of Ryan, the appellant Urbahn and appellee Martin, each on December 3, 1896, paid the sum of $3501.71, and each on December 17th paid the sum of $4376.43, aggregating the sum of $7728.14 paid by each in settlement of the amount due by Ryan as county treasurer of Webb County on his official bond upon which Martin and Ryan were cosureties.

On February 1, 1897, after the amount due by said county treasurer to Webb County had been paid by his sureties as aforesaid, Ryan, as part security for the amount paid by Urbahn, assigned to him an insurance policy on his (Ryan's) life, Urbahn paying the premium then falling due, amounting to $215. When the case was tried, the value of the policy was about $700. When the policy was assigned Urbahn told Ryan if Martin would pay one-half the premium, he would allow Martin one-half interest in the policy, but there is no evidence that Martin knew of this proposition.

There is no evidence of fraud or deception by Urbahn or Martin as alleged in the eighth, ninth, and tenth paragraphs of the latter's petition.

*Conclusions of Law.*—It is a well-settled principle of equity that if one of several cosureties subsequently takes security from the principal for his own indemnity, it inures to the common benefit of all sureties. Glasscock v. Hamilton, 62 Texas, 143; Brandt on Suretyship, sec. 268; Hall v. Cushman, 16 N. H., 462, 43 Am. Dec., 562, and note discussing the subject on page 563. In this note it is said the reason for the rule is that "Sureties are bound to observe good faith toward each other, and when funds are placed by the principal in the hands of one surety to be applied either to the payment of the debt or for the purpose of indemnifying him against any loss that may arise from the suretyship, he must be considered as holding them for the common benefit of all concerned. The giving of the funds was the act of the principal, who is equally bound to indemnify all the sureties alike, and upon him, as well as to all his means for that purpose, each of them had an equal and just claim. It is unjust and inequitable that one surety, without the consent of his cosureties, should derive any exclusive benefit from the amount of the principal in giving up what he might and ought to have applied for the common benefit of all. Where one surety stipulates for a separate indemnity, such indemnity is reached by his cosurety upon the ground either that it was intended for the benefit of all, or that the taking it was a fraud upon the others. In such cases courts of equity convert him into a trustee,

not permitting him to allege his own turpitude or selfishness as a protection, for they enter into the agreement under a belief of perfect equality, trusting apparently to the same laws of indemnity and to the united exertion of each other to avoid harm severally; therefore for one to take a separate indemnity is fraud upon the rest, and more especially as it lessens the ability of the principal to indemnify the others, and if taken without such secrecy, it is presumed to be designed for the benefit of all. It makes no difference how he acquires the fund, if he has a right to retain it, he can not claim the whole benefit, but must share it with his cosureties." The rule stated, as well as the principles upon which it is founded, is as well established as any other in equity jurisprudence, and no further citation of authorities to support it is deemed necessary.

A cosurety who is also surety for the same principal to a third person has a right to take indemnity from said principal against loss on said liability to such third person, and the other cosurety has no right to participate in such indemnity. Brown v. Ray, 18 N. H., 102. But when a surety, after he becomes bound, and before he is indemnified, takes a mortgage on property of the principal to indemnify himself, if there are several demands on which he is surety with different cosureties, and the security is taken generally for his indemnity, it has been held that the indemnity shall be apportioned upon all the demands pro rata. Brandt on Suretyship, sec. 268.

After the debt of the principal is paid by several sureties in equal proportions, the equities between them as cosureties cease, and each becomes an independent creditor of the principal for the amount paid by him. In such case, if one afterwards received indemnity from the principal the others are entitled to no part thereof. Brandt on Suretyship, sec. 273; Messer v. Swan, 4 N. H., 48; Hall v. Cushman, 16 N. H., 462; Allen v. Wood, 3 Ired. Ch., 386; Harrison v. Phillips, 46 Mo., 520.

When the equitable principle announced in the first paragraph of these conclusions is applied to the facts in this case, it is a matter of no moment whether the deed of November 13, 1896 (in effect a mortgage), executed by Ryan to Martin, was intended by the grantor to be executed for the benefit of both Martin and Urbahn or for the benefit of Martin alone, for in either event it inured to the common benefit of both as sureties on Ryan's bond. Had its effect been to indemnify Martin only, he could not have been deprived of the security by its attempted revocation or the subsequent deed of trust made by Ryan to Sanchez to indemnify both sureties. But as its effect was to indemnify both, its attempted revocation and the execution of the deed of trust to Sanchez did not change it, but left the matter as though they had never been executed.

Urbahn being surety for Ryan on the latter's note for $29,190.59 due to the Milmo National Bank, had the right, as such surety, to take indemnity from its principal, and the value of the property upon which the chattel mortgages were given, being much less than the amount due by Ryan to the bank, Urbahn as well as the payee of the note had the right

to have such security applied to the payment of Ryan's indebtedness to the bank. Ryan could not expect Urbahn to look to the property covered by the chattel mortgages as indemnity for his liability as surety on his, Ryan's, bonds as county treasurer of Webb County until the debt due by Ryan, which the mortgages were given to secure, was discharged. Nor was Martin entitled to any contribution from Urbahn by reason of his having taken said chattel mortgages to indemnify him as Ryan's surety to said bank. This rests upon the principle stated, that a cosurety who is also surety for the same principal to a third person, has a right to take indemnity from said principal against loss on said liability to such third person, and the other cosurety has no right to participate in such indemnity.

Martin and Urbahn having as sureties paid the indebtedness in equal proportions due by Ryan as county treasurer of Webb county, and the equity between them as cosureties having ceased, and each having become an independent creditor of the principal for the amount paid by him, either could then have taken indemnity from Ryan for the amount due him for such payment, and the other surety would be entitled to no contribution or part of such indemnity from the one receiving it. Therefore the assignment of the life insurance policy by Ryan to Urbahn having been made after he and Martin had each in equal proportions paid the debt of his principal to Webb County, such assignment inured to the benefit of Urbahn, and Martin was entitled to no interest in or contribution from it.

From these conclusions it follows that Urbahn had an equal interest in the mortgage lien evidenced by the deeds from Ryan to Martin with the appellee, and that the court erred in foreclosing such lien in favor of Martin alone, but should have decreed the lien and foreclosed it in favor of both parties for the amount adjudged by each against Ryan, and it will so be decreed by this court. With this modification the judgment of the District Court will be affirmed.

*Reformed and affirmed.*