## CRAMER v. REDMAN.

PRINCIPAL AND SURETY—CO-SURETIES, CONTRACT FOR DIVISION OF
FUTURE COLLECTIONS AFTER PAYMENT OF DEBT—CONSIDERATION—
CONTRACT—EVIDENCE—LIMITATIONS.

1. The rule that securities in the hands of a surety, as well as
   any indemnity received by him, will inure to the benefit of all
   the sureties, arises from principles of equity independent of
   contract.

2. The equities between co-sureties cease upon payment by
   them of the principal debt in equal proportions. Thereupon
   each becomes an independent creditor of the principal, so that
   if one of them subsequently receives indemnity for his own
   debt, not proceeding from securities held by him previous to
   payment of the principal debt, the others are not entitled to
   participate therein in the absence of contract.

3. Upon paying the principal debt in equal proportions co-sure-
   ties may contract for an equal division of future collections
   from the principal by either one; and the mutual promises
   constitute a good and sufficient consideration.

4. The evidence considered and held to sustain a finding that
   co-sureties upon paying the debt in equal proportions had
   contracted that future collections by either from the principal
   debtor should be divided between them.

5. Where one surety sues another for his share of money col-
   lected by the defendant from the principal debtor, basing the
   action upon a contract, made at time of payment by the co-
   sureties of the principal debt in equal proportions, for division
   of future collections, it is unnecessary for plaintiff to prove
   that he has collected something by his individual endeavor,
   since the promise to divide constitutes the consideration for
   such a contract.

6. In such suit it was not error to admit testimony that plain-
   tiff and defendant jointly requested the principal debtor to
   pay the money due them, since its tendency, even though
   slight, was to show that defendant had recognized the joint
   interest of the parties.

7. Where testimony was admitted concerning money received
   by plaintiff on account of former securities, it is held not to
   have been prejudicial error, especially as much of such tes-
   timony was received without objection.

8. Where defendant, a co-surety, had taken by assignment a
   contract wherein the principal debtor had engaged to care for

certain cattle for a share in the profits, and under the assignment defendant agreed to advance the necessary capital to enable the principal debtor to carry out the contract; and was to, and did, receive, after the repayment of such advances, and other expenses, out of the profits coming to the principal debtor the amount due to him for payment made as one of the sureties for such principal debtor. *Held,* that the amount so received was within the terms of a contract between defendant and his co-surety, made when they had, in equal proportions, paid the principal debt, that they should divide between them whatever might be afterward collected by either from the principal debtor.

9. Defendant having already received certain money from the principal debtor, one-half of which was claimed by the plaintiff as co-surety, the fact that the contract of the principal debtor, assigned to defendant, out of which the money had been received, had not been fully performed, was immaterial; it not appearing that the proceeds subsequently to be collected would be insufficient to cover expense of performance of the remainder of the contract.

10. In a suit by one co-surety to recover from another an equal share of certain money collected by defendant from the principal debtor, basing the action upon a contract for a division of any money collected by either surety from the principal debtor, the fact that the statute of limitations has run upon the debt of the principal debtor to the plaintiff is not material, since the controversy relates solely to liability of defendant, upon the contract between him and plaintiff to share with the latter money received by him from their common debtor; and it is not a question of the right of plaintiff to recover from the principal debtor.

[Decided May 15, 1902.]

ERROR to the District Court, Johnson County, HON. JOSEPH L. STOTTS, Judge.

This action was instituted in the District Court by Manlius T. Redman against Newton E. Cramer to recover an alleged share of certain money collected by defendant from one Holland, for whom the parties had been so-sureties. The allegations of the petition as finally amended were as follows:

"1. That plaintiff and defendant, as co-sureties for one William H. Holland as principal, signed a note to John T.

Webber on January 15th, 1889, for the sum of $1,985 and interest thereon.

"2.   That at the maturity thereof the said Holland, maker thereof, was insolvent, and ever since said date has remained insolvent, and still is insolvent, and plaintiff, by the exercise of a high degree of diligence, has been unable to collect over the sum of $39 to apply on the debt named herein.

"3.   That said Holland failed to pay said note when due, and thereafter plaintiff and defendant paid thereupon and in satisfaction thereof the sum of $2,183.50, each paying one-half thereof, and received said note from the holder.

"4.   That, upon the payment of the said note, the plaintiff and defendant made an oral agreement, in consideration thereof and of the mutual promises of the parties hereto, unto each other, and the partial execution of said agreement, and in consideration of the exercise of care, vigilance and energy to collect from said Holland for their joint benefit, by each party hereto, and the giving to each of an interest in the debt owing him by Holland, that the said debt should be held by the parties hereto as a joint debt, owing to them from Holland, and that they would exercise their best care and endeavor to collect from Holland for their joint benefit, and that they would divide and share equally the sums collected by each, for their joint benefit, until said debt due them, with interest, was discharged.

"5.   That pursuant to said agreement plaintiff in January, 1890, collected from Holland $39, and paid to defendant the one-half thereof.

"6.   That on March, 1898, said Holland gave to defendant security, and assigned a contract to him, and by virtue of said assignment defendant collected out of property of Holland, to apply on said debt, the sum of over $3,000, as plaintiff is informed and believes.

"7.   That plaintiff has demanded from defendant the half, which was paid defendant by said Holland to apply on their said debt held in common above described, but said defendant has wholly refused to pay any portion thereof to plaintiff.

"8. The plaintiff prays judgment for an accounting of the said sum of $3,000, so paid by Holland, and for the sum of $1,500 thereof and costs."

The defendant filed an answer containing the following admissions, denials and affirmative allegations:

"1. The defendant denies each and every allegation set forth in said plaintiff's amended petition, except those portions hereinafter expressly admitted, qualified or explained.

"2. This defendant admits that on January 15th, 1889, the plaintiff and defendant, as co-sureties with each other, signed a certain note made by W. H. Holland to John T. Webber for the sum of $1,985, and interest thereon from date at the rate of 1 per cent. per month, which note, by the terms thereof, became due six months after said date.

"3. And the defendant further alleges that said plaintiff and defendant remained as such co-sureties for the said W. H. Holland until the 14th day of September, 1889, at which date said plaintiff and defendant paid to the said John T. Webber the full amount of said note, both principal and interest, the said sum amounting to $2,143.50, which sum of money was paid in equal proportions by this defendant and the above named plaintiff, that is to say this defendant, Newton E. Cramer, paid the sum of $1,071.78, and the said plaintiff, Manlius T. Redman, also paid the sum of $1,071.78, and that by virtue of said payments the said defendant as well as the said plaintiff herein became an independent creditor of the said W. H. Holland for the respective amounts so paid by each.

"4. And the defendant further answering said amended petition alleges that in January, 1890, he received out of the proceeds of certain personal property belonging to the said W. H. Holland about the sum of $19.50 to apply upon his said demand against the said W. H. Holland, but this defendant expressly denies that the same was paid over to him by the said plaintiff, by virtue of an agreement made by and between this plaintiff and defendant at the time of the payment of said note to the said John T. Webber, as stated in paragraphs 4 and 5 of said amended petition.

"5. This defendant expressly denies each and every allegation and statement contained in said paragraphs 4 and 5 of said amended petition.

"6. And this defendant, further answering said amended petition, alleges that on the 17th day of March, 1898, the said W. H. Holland, for the purpose of securing this defendant in the sum then due him and the interest thereon, upon and for which he became indebted to said defendant as above stated, made and executed an instrument of writing whereby the said W. H. Holland assigned to this defendant his interest in a certain contract with the Gibson Cattle Company of Gibson, Illinois, by which instrument of writing it was agreed that the said assignment was intended as security to this defendant for the amount then owed by the said W. H. Holland to this defendant for the sum so paid upon said note to the said John T. Webber as aforesaid, and the interest thereon.

"7. And the said defendant further alleges that on or about the 29th day of September, 1899, the said Gibson Cattle Company, by virtue of said assignment so made as aforesaid to this defendant, paid to this defendant about the sum of $2,210.91, the same being the amount then due, principal and interest, from the said W. H. Holland to this defendant, upon said individual indebtedness.

"8. And this defendant further answering said amended petition alleges that for the purpose of securing himself by and from the said W. H. Holland, upon his said demand as aforesaid, he was at great expense, hindrance and annoyance, and at great financial risk constantly from said 17th day of March, 1898, until the said 29th day of September, 1899, during all of which time said plaintiff had full knowledge that said assignment was made, executed and intended merely as security for said individual indebtedness; and that said defendant was continually being put to great expense, hindrance and annoyance, and great financial risk and trouble in securing his said claim, notwithstanding said plaintiff made no objection thereto, but, on the contrary, re-

mained in silence, with full knowledge of all the facts pertaining to said security, until after said defendant had succeeded in making said collection by virtue thereof.

"9. And the defendant, further answering said plaintiff's amended petition, denies that said W. H. Holland has paid any sum or sums whatever to this defendant upon said indebtedness except as above stated, and that no part of the same was for the use and benefit of said plaintiff."

From a judgment for plaintiff, defendant brought error.

*Alvin Bennett* and *E. E. Enterline*, for plaintiff in error.

In the last amended petition filed by plaintiff, and which he attempted to support by proof, he sought to establish his right to one-half of the moneys collected by the defendant under the Gibson Cattle Company contract, by virtue of the alleged contract had by him with defendant at about the time of the payment of the Webber note by them. The only allegation set forth in the petition as to the performance of the alleged agreement on the part of the plaintiff is the following: "That, pursuant to said agreement, plaintiff, in January, 1890, collected from Holland $39 and paid to defendant the one-half thereof." When a specific act is to be done by the plaintiff, or any number of acts by way of condition precedents, he must show in the pleading precisely what he has done by way of performing them. This is the rule at common law. (4 Ency. of Pl. & Pr., 632.) Our statute has changed the rule at common law, but it is still necessary for the party to plead that he duly performed all the conditions on his part, which, if denied, must be established on the trial by proof of the facts showing such performance. (Rev. Stat., Sec. 3565.) As the plaintiff has failed to allege performance, as provided by statute, and has also failed to plead performance under the rule at common law, the amended petition wholly fails to state facts sufficient to constitute a cause of action. And the defendant, by answering, did not waive his right to object to the petition at this time on that ground. (Rev. Stat., Sec. 3537.)

The facts do not show a sufficient consideration to constitute a valid agreement between the plaintiff and defendant, and for that reason also the amended petition is fatally defective. (Mygatt v. Tarbell (Wis.), 55 N. W., 1031.) It certainly cannot be successfully contended by the plaintiff that he acquired any rights against the defendant by paying one-half of the Webber note, because, being sureties, and each having paid his proportionate share, each became an independent creditor of William· H. Holland, and the relation of their suretyship thus ceased. (Brandt on Suretyship, Sec. 273; Urbahn v. Martin et al. (Tex.), 46 S. W., 291; Fitch v. Hammear et al. (Colo.), 31 Pac., 336; Tabor v. Cochrell (Tex.), 16 S. W., 786.)

Over the objection of the defendant, the plaintiff was permitted to testify that he and the defendant went to Holland and dunned the latter for the moneys claimed to be due them. This testimony was certainly not material and should have been excluded. (Mygatt v. Tarbell (Wis.), 55 N. W., 1031.)

The evidence concerning the chattel mortgage given by Holland to plaintiff and defendant prior to the time of payment, and as to the disposition of the proceeds, was not material or competent. It must have been admitted by the court upon the theory that it tended to prove partial performance of the alleged contract upon which plaintiff seeks to recover. We contend· that the admission of this testimony over the objection of the defendant constituted prejudicial error. (Rock Springs National Bank v. Luman (Wyo.), 38 Pac., 678; Marsteller v. Leavitt (Cal.), 62 Pac., 384.)

Conceding that the facts pleaded by the plaintiff in his amended petition constitutes a valid agreement, the testimony concerning moneys collected by the defendant under the Gibson Cattle Company contract, and as to the moneys that might still be realized thereunder, was not competent or material. It is not alleged in the petition that defendant agreed with plaintiff to divide with him moneys that were to be realized by the defendant out of any contract made by Holland with other parties, and which might be assigned by

Holland to defendant., According to the allegations of the petition, defendant was to divide with plaintiff.

The minds of the parties did not meet on any such agreement as pleaded in the amended petition, which would have been necessary to bind the defendant, conceding, for the sake of argument, that the facts pleaded constitute a valid agreement between them. (Melich v. Kelly (Neb.), 73 N. W., 945; Parsons on Contract, Sec. 475.)

Even if an action could be maintained, it was prematurely brought, as it appears from the testimony in the case that the contract existing between the Gibson Cattle Company and Holland, and which was assigned by the latter to the defendant, had not been fully performed at the time of the trial. There were still some cattle remaining on the range which had to be gathered and disposed of. This would necessitate some expenditure, and for that reason it would not be definitely known what the profits would actually be until full performance.

At the time the defendant received his assignment from Holland, by which he agreed to make loans to Holland, the plaintiff had no claim against Holland which could have been enforced by reason of statute of limitations. (Sullivan v. Sullivan (Cal.), 33 Pac., 862.)

*Allen G. Fisher* and *Alvin T. Clark,* for defendant in error.

It has prevailed in almost all courts that in actions of an equity nature and wherein equitable relief to any extent was sought that the chancellor without error may hear the whole testimony, and that the admission of testimony that is irrelevant and immaterial is not reversible error. It is true that in a strictly law case this court has held otherwise upon the circumstances in the case. While it is argued in the brief of plaintiff in error that the trial judge must necessarily have been influenced in his finding and in his theory of the merits of the case by the immaterial testimony admitted over objection and complained of in motion for new trial, the record proves this not to be the fact. The evidence con-

cerning the chattel mortgage given by Holland to plaintiff
and defendant prior to the time of payment was not ad-
mitted by the trial judge upon the theory that equities con-
tinued to exist between the parties after the payment of this
note, simply by reason of their equal payments, because the
court had held that such was not the case in sustaining the
motion of the defendant below to the first petition of plaintiff
which was framed upon that theory, and the trial court ad-
hered at all times during the pendency of this action to the
doctrine which he announced in the beginning, i. e., that the
sureties became independent contractors from the time of
their equal payment of the note, and that no equities con-
tinued between them, hence he did not receive this testimony
upon this theory and no damage was done plaintiff in error
by its reception.

As to the disposition of the proceeds of the chattel mort-
gage, the trial court received it, in fact drew out from witness
the statement that this $39 was the proceeds of security given
before the payment of the note; and this was a circumstance
material for the defendant below, not for the plaintiff, and
wholly consistent with the holdings of the trial judge, which
were favorable to Cramer in his rulings upon the earlier
petitions. So that while this court has held that when the
admission of testimony indicates an erroneous theory of the
case, then it is prejudicial error to admit the testimony, be-
cause its admission proves the mind of the trial court as to
the theory of the case. Such conclusion does not follow in
the case at bar, since the trial judge had previously made a
record upon the application of Cramer, showing that he tried
the case upon Cramer's theory of the law in relation to this
action. (Elliot App. Pro., Sec. 641; Glasscock v. Hamil-
ton, 62 Tex., 153.)

That it was proved that plaintiff and defendant went to
Holland and dunned him for the money jointly due them
was competent as corroborating the testimony showing the
agreement made when the note was paid, and as an act of
admisison by Cramer that such contract was made and that

such contractual relation existed. It was also competent as showing good faith of plaintiff in relation to it.

That no further moneys could be realized under the old chattel mortgage given to Redman and Cramer before the note was paid was necessary to be proved before plaintiff below would be entitled to an accounting and contribution at the hands of the defendant. It was one of the essentials to the plaintiff's right to recover to show that diligence in pursuit of securities already in plaintiff's hands would not give him an equal amount with the amount just collected by the defendant.

In the absence of any special contract, Cramer is liable to Redman for one-half the amount collected by him. Where two co-sureties have each contributed one-half toward the payment of the debt of the principal, and one of them has realized from the principal one-half the debt, the equitable principles whereby contribution is enforced between co-sureties, require in such case that all payments made to one shall enure to the benefit of the other, in proportion to their respective liability of payments. "The action for contribution rests not upon contract, but upon the broad principles of equity; that in cases where there is an equity in the obligation there shall be equality in supporting it." (Paulin v. Kaighn, 27 N. J. L., 503; Johnson v. Vaughn, 65 Ill., 425; Pinkston v. Taliaferro, 9 Ala., 547; Vliet v. Wyckoff, 42 N. J. Eq., 642; Mosely v. Fullerton, 59 Mo. App., 143; Bachelder v. Fiske, 17 Mass., 464; 24 Ch. D., 709.)

Even if the law did not require a co-surety to account for payments received by him, in the absence of a contract, a special agreement to that effect compels such accounting. (Smith v. Hicks, 5 Wend., 48.)

The special contract in the case at bar was supported by a valuable and sufficient consideration. The consideration may be found by several lines of inquiry. First, where two persons are subjected to a liability and agree upon a method of discharging it whereby advantages accrue to either one, or disadvantages are avoided, those advantages, or the avoid-

ing of those disadvantages, is a sufficient consideration for a mutual agreement. Second, and between co-sureties on the one side and a creditor on the other, the creditor is not compelled to adjust equities. Each one is to him liable for the whole debt. By the agreement to do so each contributes his share, and by the carrying out of that agreement each was thereby absolved from the liability to the creditor for the other half of the debt, and that absolution was a sufficient consideration for a promise to share any moneys realized from the principal debtor by either person so absolved. Third, chiefly, however, the consideration is found in the *mutuality of the promises.* (Clark Contr., 165; 2 Parsons Contr., Ch. 1, Sec. 9; Addison Contr., 18; Bish. Contr., 76; Phillips v. Preston, 5 How., 278; Briggs v. Tillotson, 8 J., 304; Coleman v. Eyre, 45 N. Y., 38; Morrow v. Jones, 41 Neb., 867; Flanders v. Wood, 83 Tex., 277; Graves v. Graves, 7 B. Mon., 213; 1 Smith Lead. Cas., 302; 2 Bl. Com., 443; Langdell's Su. of Law, 45; 6 Ency. Law, 703; Taylor v. Smith, 116 N. C., 531; Langford v. Cummings, 4 Ala., 46; Lightfoot v. Strahan, 7 Ala., 444; Borum v. Garland, 9 Ala., 452; Hussey v. Roquemore, 27 Ala., 281; Murphy v. Barefield, 27 Ala., 634; Thomason v. Dill, 30 Ala., 444; Connely v. Devoe, 37 Conn., 570; Doherty v. Doe, 18 Colo., 456; Roberts v. Carter, 31 Ill. App., 142; Ohio Thresher, &c., v. Nensel, 7 Ind. App., 328; Leach v. Keach, 7 Ia., 235; Rollins v. Marsh, 128 Mass., 116; Gibson v. Donnely, 13 N. Y. Supp., 808; Brown v. Catawba Lumber, 117 N. Caro., 287; Smith v. McKinney, 22 Ohio St., 200; Flegal v. Hoover, 156 Penn., 276.)

POTTER, CHIEF JUSTICE.

The parties to this suit, upon the failure of the principal debtor to pay a promissory note which they had signed as co-sureties, paid the amount thereof in equal proportions, each of them paying the sum of $1,071.50. The note had been given January 15, 1889, and was paid by said sureties September 14, 1889. In 1899, probably in September of that

year, the plaintiff in error received $2,210.91 from the net proceeds of a certain contract which the principal debtor, in 1898, had assigned to him. The sum so received is claimed by plaintiff in error to be the amount, including interest then due to him, from the principal debtor on account of the money advanced by him toward the payment of the note aforesaid. This suit was instituted by defendant in error for an accounting and to recover one-half of the sum so received by the plaintiff in error. It is alleged in the petition that the principal debtor was and is insolvent, and that upon the payment of the note the parties—plaintiff and defendant—agreed orally, in consideration of the payment of an equal amount by each, and of their mutual promises, and in consideration of the exercise of care, vigilance and energy of each to collect the amounts paid for their joint benefit, and the giving to each of an interest in the debt owing him by the principal debtor, that the debt should be held by said parties as one owing to them jointly, and that they would exercise their best care and endeavor to collect the same for their joint benefit, and would divide and share equally the sums collected by each, until the said debt should be discharged with interest. The plaintiff in error, defendant below, by his answer, admitted that the parties had been co-sureties and as such had each paid an equal proportion of the amount due on the note, but alleged that thereupon they became several and not joint creditors of the principal maker, and denied the making of the agreement set out in the petition. He further alleged that the contract out of which he had collected the money in controversy had been assigned to him to secure the amount paid by him upon the note with interest.

The cause was tried to the court without a jury, and the plaintiff, defendant in error here, was awarded judgment for $1,105.45 and costs. Motion for a new trial filed by the defendant was overruled, and the case comes to this court on error.

The right of the plaintiff below to recover must depend

upon the agreement, if any, made between the defendant and
himself at the time they paid the note. He may not rely
upon the ordinary equities applicable between co-sureties,
for the reason that, upon the payment of the note by the
sureties in equal proportions, the equities no longer existed.
It is true that, as a general rule, any securities in the hands
of a surety, as well as any indemnity received by him, will
inure to the benefit of all the sureties. (1 Story's Eq. Juris.,
Sec. 499; Harris on Subrogation, Secs. 186, 200, 207, 379.)
The ground of relief in such cases does not stand upon con-
tract express or implied, but arises from principles of equity
independent of contract. Where, however, the debt is paid
by several sureties in equal proportions, the equities between
them as co-sureties cease, and each becomes an independent
creditor of the principal for the amount he may have paid;
so that if one of them subsequently receives indemnity
from the principal for his own debt, the others are not en-
titled to participate therein, such indemnity not proceeding
from securities held by the surety or creditor previous to
payment of the debt. (Harris on Subrogation, Sec. 379;
Urbahn v. Martin (Tex. Civ. App.), 46 S. W., 291; Hall v.
Cushman, 16 N. H., 462; Harrison v. Phillips, 46 Mo., 520.)

But there can be no doubt that the sureties, upon so pay-
ing the debt, may contract between themselves for an equal
division of whatever may afterward be collected by either
one upon the debt from the principal, each agreeing that
any amount collected by him shall be collected for the joint
benefit of all, and that the others shall be entitled to share
equally therein until the obligation of the principal debtor
to them shall be satisfied. (Smith v. Hicks, 5 Wend., 48.)
And in such case the mutual promises constitute a good and
sufficient consideration. (Philpot v. Gruninger, 14 Wall.,
577; Morrow v. Jones, 41 Neb., 867; Taylor v. Smith,
116 N. C., 531; Phillips v. Preston, 5 How. (U. S.), 278;
Briggs v. Tillotson, 8 Johns., 304; Clark on Contracts, 165;
1 Parsons on Contracts (5th Ed.), 448.) In the case of
Smith v. Hicks, *supra,* it was held that where two persons

agree equally to bear and pay the losses and damages which may be sustained in consequence of one of them becoming special bail for a third person, and after they have equally contributed to the payment of the debt, one of them is refunded the amount paid by him, he is answerable to the other for a moiety of the money received by him.

To establish the contract alleged in the petition, the defendant in error testified in his own behalf, and produced as witnesses Mr. Munkers, the agent for the original payee of the note, and to whom the note was paid, and Mr. Holland, the principal debtor. The defendant in error, plaintiff below, testified that they (plaintiff in error and himself) paid the note to Mr. Munkers, who delivered the note to them; and that they took the note and went out to find Mr. Holland; that in the evening of the same day they returned to Mr. Munkers and handed the note to him to hold for them, having agreed that they would keep the note together, get what they could on it and divide the proceeds equally between them, each of them agreeing that they would endeavor to collect from Holland.

Mr. Munkers testified that he was acting as agent for Webber, the payee, and on the 14th day of September, 1889, the parties to this suit, Mr. Redman and Mr. Cramer, appeared, and each one paid one-half of the note, and he endorsed the payments on the note, went out and found Webber and had him sign his name on the back of the note, brought it back and turned it over to Mr. Cramer and Mr. Redman. He was then asked to state how the note again came into his possession, and he testified as follows: "It was paid about four o'clock in the afternoon, and that evening in the treasurer's office they brought it back to me after supper. Cramer and Redman both, in person, brought it back."

Question. What was said to you by either of the parties in the presence of the other?

Answer. Both were present and delivered it to me as their agent and requested me to assist them all I could in

getting something out of Mr. Holland, for the purpose of paying Cramer and Redman.

Q. And what, if anything, else was said about what they would do?

A. When I first delivered the note to them they took it and went out of the office. It was just about banking time, for Mr. Cramer gave me a check for his part of the note. After their paying the note I turned it over to them. After supper they came back and said that they had concluded to hold the note together and leave it with me in escrow, and wanted me to assist them in collecting it, and each one of them were to rustle and get what they could to apply on the note.

He also testified that it was understood that each was to have half of what was collected. At the time the note was left with the witness, some other papers were also deposited with him, and among them a chattel mortgage previously given to the sureties by Holland, and they expected to secure some money from that. It appears that a small sum was realized from that source and divided between the parties. On cross-examination, Mr. Munkers stated that the parties told him, at the time of turning the note over to him, that whatever moneys he collected were to be applied one-half to each party; and that Cramer and Redman told him when they returned in the evening that they had concluded not to divide the note, but to hold it together and each one was to rustle Mr. Holland for all money they could, and wanted the witness to do the same.

Mr. Holland testified that after Cramer and Redman paid the note, he had several conversations with them, and that they always claimed to him that they held the note together; and that on several occasions they came to him together and requested him to pay them the balance due.

Mr. Cramer, testifying in his own behalf, denied the making of any agreement between Redman and himself looking to a joint holding of the note or debt, or for a division of subsequent collections from Holland.

The trial court found for the plaintiff, Redman, and must have done so upon the theory that the contract had been established whereby the parties had agreed to hold the note or debt jointly and to share equally in whatever should thereafter. be collected from Holland by either of them; and it is not perceived how any different conclusion could have been reached. There was a direct conflict in the evidence, it is true, but the strong preponderance was in favor of the plaintiff.

Mr. Munkers, a disinterested party, was very clear in his testimony, and he certainly understood from what the parties told him in the presence of each other, that they had agreed to continue jointly interested in the debt and divide between them any money which might be received upon that account by either one of them. Each was thereby to derive benefit from the diligence of the other; and the promise of each that. such division should occur was the consideration for the like promise of the other. It was unnecessary for the plaintiff below to prove any performance on his part as a condition precedent to a right of recovery; that is to say, he was not required to show that he had in fact collected something by his individual endeavor, and paid half of it to the defendant, as seems to be supposed by counsel for the latter. It was the promise that constituted the consideration.

It is contended that the court erred in permitting the plaintiff to testify that he and the defendant went to Holland and requested him to pay the money due them. We do not think error occurred in admitting the testimony. The contract alleged in the petition was denied, and the testimony was material, although its effect may have been slight, as tending to show that Cramer had recognized the joint interest of the parties in the debt due them from Holland. Moreover, the same fact was brought out in the testimony of Mr. Holland without objection.

It is urged also that it was error to admit testimony on the part of the plaintiff concerning certain mortgages ex-

ecuted by Holland to Cramer and Redman prior to the payment of the note by them. It appears that $39 had been received by Redman from proceeds of certain property covered by a chattel mortgage so executed, which sum was divided between the parties. It is contended that the evidence could only have been admitted on the theory that the collection of the above named sum of money and its division with defendant tended to show partial performance of the alleged contract on Redman's part. But it is clear that Cramer was in no wise prejudiced by the testimony, as Redman was not bound to show that he had collected money from Holland and shared it with Cramer. But much of the testimony about that matter went in without objection, and we are unable to see that any reversible error was committed in admitting such as was objected to.

It is further contended that the contract shown by the plaintiff did not entitle him to recover the money received by defendant under the contract assigned to him. The objection that the contract did not provide for nor contemplate a division of profits that might be realized out of a contract made between Holland and other parties and assigned to defendant is exceedingly technical. Such a contract, of course, was not thought of when the parties paid the note. But the agreement did clearly contemplate that any money received by either party on account of the debt created by payment of the note should be shared equally between them. And it is clear that the money in question was received by defendant on that account.

The contract assigned to plaintiff in error was one wherein Holland had engaged to care for certain cattle owned by others for a share in the profits, and under the assignment Cramer was to advance to Holland certain money to pay the expense of carrying out the contract. After the repayment of those advances, and certain other preferred claims, Cramer was to receive out of the share of the profits coming to Holland the amount due from the latter to him; it being stated in the assignment that the principal of the

amount due arose by reason of the payment by said Cramer and one M. T. Redman of a certain note given by Holland to J. T. Webber. There does not seem to be anything in the nature of the contract and its assignment which can have the effect to take the amount received by Cramer upon the debt aforesaid out of the operation of the agreement between Redman and himself.

There is no merit in the point that, as the contract assigned to Cramer had not been fully performed, the action was prematurely brought. It appeared that a small number of cattle remained on the range, and that they would have to be gathered and shipped. But Cramer had already received and applied the money in question; and it was not made to appear that the proceeds of the cattle subsequently to be gathered would not be sufficient to cover the expense of gathering and shipping them. Having received certain money which ought to be divided with Redman, we see no reason why the latter may not recover the amount coming to him without waiting for Cramer to make additional collections.

Any question of the privilege of Holland to have defended against a suit brought against him by Redman, by pleading the statute of limitations, is not material to this controversy. Not only was Holland aware, as he testified, that the parties had agreed to hold the debt due from him to them for their joint benefit, but with that knowledge he made a payment to Cramer upon the debt; and it might be claimed with some show of reason, we think, that the payment operated to remove the bar of the statute. But a complete answer to the point suggested is that the question here relates solely to the liability of Cramer, upon the contract made between Redman and himself, to share with the former the money received by him from their common, if not joint, debtor; and it is not a question of the right of Redman to recover any part of the debt from Holland. The judgment must be affirmed.                                     *Affirmed.*

Corn, J., and Knight, J., concur.